UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

DRAGAN JANICIJEVIC, on his own
behalf and on behalf of all other similarly
situated crew members working aboard
BAHAMAS PARADISE CRUISE LINE
vessels

       Plaintiffs,

v.                                                                **CLASS ACTION**

CLASSICA CRUISE OPERATOR, LTD.,
PARADISE CRUISE LINE OPERATOR
LTD. INC., a/k/a PARADISE CRUISE LINE
OPERATOR LTD. d/b/a BAHAMAS
PARADISE CRUISE LINE, BPCL
MANAGEMENT, LLC, d/b/a BAHAMAS
PARADISE CRUISE LINE, LLC.,

       Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DRAGAN JANICIJEVIC, on his own behalf and on behalf of all other similarly situated crew members working aboard BAHAMAS PARADISE CRUISE LINE vessels (hereinafter collectively referred to as "Plaintiffs"), hereby sues Defendants, CLASSICA CRUISE OPERATOR, LTD., PARADISE CRUISE LINE OPERATOR LTD. INC. a/k/a PARADISE CRUISE LINE OPERATOR LTD. d/b/a BAHAMAS PARADISE CRUISE LINE, BPCL MANAGEMENT, LLC d/b/a BAHAMAS PARADISE CRUISE LINE, LLC., and for good cause allege:

## JURISDICTION AND PARTIES

1.     Plaintiff, DRAGAN JANICIJEVIC, is a citizen of Serbia.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

2.      Defendant, CLASSICA CRUISE OPERATOR, LTD. (hereinafter "CCO"), is a foreign profit corporation incorporated in the Bahamas, has a principal place of business in New York, and is authorized to do and does transact business at its Florida office: 431 Fairway Dr, Suite 300, Deerfield Beach, Florida, 33441.

3.      Defendant, PARADISE CRUISE LINE OPERATOR LTD. INC. a/k/a PARADISE CRUISE LINE OPERATOR LTD. d/b/a BAHAMAS PARADISE CRUISE LINE (hereinafter "PCLP"), is a foreign profit entity with its principle place of business at 431 Fairway Dr, Suite 300, Deerfield Beach, Florida, 33441.

4.      Defendant, BPCL MANAGEMENT, LLC d/b/a BAHAMAS PARADISE CRUISE LINE, LLC. (hereinafter "BPCL"), is a Florida entity with its principal place of business in Florida and may be served with Summons and Process with Daniel Lambert, 100 W. Cypress Creek Rd., Suite 640, Fort Lauderdale, Florida, 33309.

5.      At all times material hereto, Defendants, CCO, PCLP, and BPCL, collectively owned, operated, managed, maintained and/or controlled the following subject cruise vessels: *Grand Celebration* and *Grand Classica* (hereinafter the "vessels"). Accordingly, Defendants, CCO, PCLP, and BPCL, will be collectively referred to as "Defendants".

6.      The matter in controversy exceeds the required jurisdictional amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court, the Seaman's Wage Act (46 U.S.C. § 10313, 46 U.S.C. §10504), and 18 U.S.C. §1595.

       a.   In the event that class status is not certified, Plaintiff requests an advisory jury trial pursuant to the remedies saved under the Saving to Suitors Clause of 28 U.S.C.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

§1333. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454-55 (2001) ("Trial by jury is an obvious… example of the remedies available to suitors."); *see also Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1063 (11th Cir. 1996). It is within the discretion of the court to allow for an advisory jury in an admiralty or maritime claim.

7.  Defendant(s), at all times material, personally or through an agent:

    a.  Operated, conducted, engaged in or carried out a business venture in this state and/or county and/or had an office or agency in this state and/or county;

    b.  Were engaged in substantial business activity within this state;

    c.  Operated vessels in the waters of this state;

    d.  Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193; and/or

    e.  The acts of Defendant(s) set out in this Complaint occurred in whole or in part in this county and/or state.

8.  Defendants are subject to the jurisdiction of the Courts of this state.

9.  The causes of action asserted in this Complaint arise under U.S. General Maritime Law and/or the Jones Act, 46 U.S.C. § 30104.

10. Defendants' *Grand Celebration* fly's a flag of convenience of the Bahamas.

11. Defendants' *Grand Classica* fly's a flag of convenience of Portugal.

12. At all times material hereto, Defendants operated the vessels in navigable waters.

13. At all times material hereto, an employer-employee relationship existed between Defendants and Plaintiffs, as Defendants controlled Plaintiffs' work aboard the vessels.

    a.  Plaintiff DRAGAN JANICIJEVIC was employed by Defendants to work on Defendants' vessels as a Casino Dealer.

14. At all times material hereto, Plaintiffs were "seamen" aboard the respective vessels to

- 3 -

which they were assigned by Defendants to work, as the term "seaman" is defined under U.S. General Maritime Law and/or the Jones Act, 46 U.S.C. § 30104, Seaman's Wage Act (46 U.S.C. § 10313, 46 U.S.C. §10504).

15.     "Seamen from the start were wards of admiralty." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) (*citing Robertson* v. *Baldwin*, 165 U.S. 275, 287 (1897)). In 1823, Justice Story declared: "Every Court should watch with jealousy an encroachment upon the rights of a seaman, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But Courts of maritime law have been in the constant habit of extending towards them a peculiar, protecting favor and guardianship. They are emphatically the wards of the admiralty." *Harden v. Gordon*, 11 Fed. Cas. 480 (No. 6047) (C.C. Me 1823). "From the earliest times maritime nations have recognized that unique hazards, emphasized by unusual tenure and control, attend the work of seafarer." *See Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 727 (1943). The *Aguilar* Court further held: "the restrictions which accompany living aboard ship for long periods at a time combine with the constant shuttling between unfamiliar ports to deprive the seaman of the comforts and opportunities for leisure, essential for living and working that accompany most land occupations." *Id*. at 728.

16.     In *Chandris, Inc. v. Latsis*, the U.S. Supreme Court reaffirmed the longstanding principle that seafarers are wards of Admiralty Courts, given the "feature of the maritime law that compensate[es] or offset[s] the special hazards and disadvantages to which they who go down to sea in ships are subjected." 515 U.S. 347, 355 (1995).  The Fifth Circuit Court of Appeals explained the rationale for affording seafarers special protections in *Castillo v. Spiliada Maritime Corp.*: "[Seafarers] enjoy this status because they occupy a unique position. **A seaman isolated on a ship**

**on the high seas is often vulnerable to the exploitation of his employer. Moreover, there exists a great inequality in bargaining position between large ship-owners and unsophisticated seafarer**. Shipowners generally control the availability and terms of employment." 937 F.2d 240, 243 (5th Cir. 1991) (emphasis added).

17.    Accordingly, the Admiralty Courts have a rich tradition of protecting seafarers, which flows from the uniquely abhorrent conditions seafarers face at sea.  And it is not just the Courts which recognize the need to protect seafarers, as "[t]he policy of Congress, as evidenced by its' legislation, has been to deal with [seafarers] as a favored class." *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278 (1932).

18.    Plaintiffs, the Class Representative and Class Members herein, are and/or were crew members who worked for Defendants aboard Defendants' vessels and who were required to continue working aboard the ship without pay.

19.    Because Defendants unilaterally terminated employment contracts with all of its crew members and Plaintiffs herein, any arbitration provisions contained within the employment contracts and/or CBAs to which they were incorporated by reference are void.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

20.    This Class Action lawsuit deals with Defendants' failure to abide its contractual agreements with its crewmembers.  Pursuant to Plaintiffs' employment contracts, Defendants are required to pay Plaintiffs two months of wages and/or Basic Pay Severance upon Defendants terminating Plaintiffs' employment contracts.  Yet when the COVID pandemic halted all sailings, Defendants forced all crewmembers aboard the ship to sign a document stating they were voluntarily staying onboard, without pay.  The crewmembers were forced to sign these agreements by being threatened that they would not be rehired if they did not sign.  This system of requiring

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

crewmembers to work, without pay, is the equivalent of forced labor or peonage.

21.    This lawsuit also deals with Defendants failure to timely repatriate its crew members and misrepresenting to crewmembers that Defendants were arranging repatriation for crew members. The crew were unnecessarily kept on the ships for months on end, many thousands of miles away from their homes and families. Remarkably, there are still crewmembers effectively held hostage on the ship. This egregiously delayed repatriation is tantamount to false imprisonment of the crew.

22.    Outlined below is a timeline of events relevant to this Class Action lawsuit against Defendants. This timeline supports all claims asserted herein on behalf of the entire class:

   a.  October 12, 2019 (*Grand Classica*) - Plaintiff DRAGAN JANICIJEVIC boards the *Grand Classica* as a crew member.

   b.  March 8, 2020 – The CDC warns the public to avoid traveling on cruise ships, as several vessels across the globe have been quarantined due to the spread of COVID-19.

   c.  On or about March 9, 2020 – In response to the CDC travel advisory the day before, Oneil Khosa, Defendants' CEO, stated the following: "We want to reassure travelers that the U.S. State Department's recommendation is just that, a recommendation, and there are currently no restrictions for those who choose to travel by cruise ship." "The safety, health and wellbeing of our guests and crew will always remain our top priority and while we continue to monitor this situation closely – maintaining communication with the World Health Organization and Centers for Disease Control and Prevention – we firmly believe the risk to our guests and crew members remains very low. We will not permit any persons who have traveled or transited from countries currently identified in the CDC list. Additionally, we have a Health Declaration in place, and we are prepared to take all necessary preventative measures as circumstances indicate."

   d.  March 14, 2020 – The CDC issued its first No Sail Order. The No Sail Order is/was applicable to cruise ship operators, like Defendants herein, and provided science updates known to date pertaining to the explosive contagiousness associated with COVID-19 and how the virus presented dangerous conditions to passengers and crew members aboard cruise ships, like the vessels named herein.[12]

   e.  March 14, 2020 – Defendants suspended all of its future cruises.

---

[12] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

f.   March 15, 2020 (***Grand Classica*** and ***Grand Celebration***) – Defendants seizes all crew members' I-95 landing permits, preventing crew members from leaving the vessels.

g.   On or about March 16, 2020 (***Grand Classica*** and ***Grand Celebration***) – Defendants transferred crew members, including Plaintiff, from the *Grand Classica* to the *Grand Celebration*, without providing personal protective equipment to crewmembers, and without implementing any distancing as crewmembers were in large groups.

h.   On or about March 17, 2020 – Defendants management holds a large, mandatory crew meeting in the theater aboard the *Grand Celebration* where crewmembers are placed closely together without any personal protective equipment. At this meeting, majority owner, Kevin Sheehan, announces that Defendants are unilaterally terminating contracts, and informing crewmembers they will not be fully compensated, despite such crewmembers' contracts ending at a later date. Defendants represent to crew members that they will be paid a discounted amount, but this never happens. In addition, Defendants refuse to repatriate crewmembers that it is imprisoning on its ships without pay.

i.   March 18, 2020 (***Grand Celebration***) – Defendants circulate a document to all crew members aboard the *Grand Celebration*, attempting to have crew members sign the document that states "I voluntary request to stay on board instead of choosing to fly home. By choosing to stay onboard without pay until the government has lifted restrictions for me to return home or until Bahamas Paradise Cruise Line returns to normal operation." Defendants management instructs crew members that whoever wishes not to sign this document, will not be entitled to work for Defendants, or, at a minimum, will be the last to be selected come back onboard for employment once operations resume.

   i.   Even if this document was signed by crew members, it is unenforceable as it was entered into under undue influence and/or duress and/or unconscionable.

j.   On or about March 19, 2020 (***Grand Celebration***) – Defendants administers three 1.5 liter water bottles to each crew member weekly. Throughout the crew member's time on the vessel and to present, crew members were served meals in large buffet settings in which they also ate meals in close quarters togethers.

k.   On or about March 19, 2020 (***Grand Celebration***) – Crew members continuously request Defendants to provide for repatriation and/or allow them off the vessel throughout their time on the vessel, including to this date. Defendants represent to crew members, including Plaintiffs, that it is doing everything it can in order to repatriate crew members.

l. <u>April 9, 2020</u> – The CDC issued its second No Sail Order.[14]

m. <u>On or about April 18, 2020</u> – The Honduran consulate in Miami, Florida said it had assisted in negotiating a repatriation flight for Honduran crew members, but Defendants refused to allow these crew members to get off the vessel and onto the flight.

n. <u>On or about June 13, 2020 (**Grand Celebration**)</u> – Defendants management holds a large, mandatory crew meeting aboard the *Grand Celebration* where crewmembers are placed closely together without any personal protective equipment.

## <u>CLASS ACTION ALLEGATIONS</u>

23.     This action is brought by Plaintiff on his own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

24.     At all times material hereto, Plaintiffs, the Class Representative and Class Members herein, are and/or were subject to illegal withholding and delay of their wages, and nonpayment of their wages as crew members of Defendants' vessels

25.     The class so represented by the Plaintiff in this action, and of which Plaintiff is a member, consists of all crew members who worked aboard Defendants' cruise vessels who were subject to illegal withholding and delay of their wages, and nonpayment of their wages

26.     This class of crew members suffered lost wages and lost employment opportunities as a result of Defendants' failure to pay Plaintiffs' wages, breaching Plaintiffs' employment contracts, and/or restraining Plaintiffs onboard the vessels.

27.     The exact number of members of the class is unknown at this time given that many members are currently in voluntary or forced isolation aboard Defendants' vessels at this time; however, at this time it is estimated that there are in excess of 10,000 members. The class is so numerous that joinder at this anticipated amount of all members is impracticable. Thus, this action

---

[14] *See* Centers for Disease Control, *April 9, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/No-Sail-Order-Cruise-Ships_Extension_4-9-20-encrypted.pdf.

satisfies the requirements of Rule 23(a)(1).

28.     There are common questions of law and fact that relate to and effect the rights of each member of the class and the relief sought is common to the entire class. The same misconduct on the part of Defendants caused the same or similar injury to each class member.  All class members seek damages under U.S. General Maritime Law and/or the Jones Act, 46 U.S.C. § 30104, the Seaman's Wage Act,  (46 U.S.C. §10313, 46 U.S.C. § 10504), for breach of the Plaintiffs' employment contracts, for false imprisonment, and for negligent misrepresentation.  Accordingly, this action satisfies the requirement of Rule 23(a)(2).

29.     The claims of Plaintiffs are typical of the claims of the class, in that the claims of all members of the class, including the named Plaintiff, depend upon a virtually identical showing of the acts and omissions of Defendants giving rise to the right of Plaintiff to the relief sought herein. Defendants were at all times material hereto engaged in the same conduct to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

30.     Plaintiff is the representative party for the class, and is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein. The attorneys for Plaintiff are experienced and capable in the field of maritime claims for cruise ship passenger injury, including class actions, and have successfully represented claimants in other litigation of this nearly exact nature. Four of the attorneys designated as counsel for Plaintiff, Jason R. Margulies, Michael A. Winkleman, Daniel W. Grammes, and Andrew S. Freedman, will actively conduct and be responsible for Plaintiff's case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

31.     This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  In support of the foregoing, Plaintiffs allege that common issues predominate and can be determined on a class-wide basis regarding: a) Defendants policy of withholding Plaintiffs' wages while restraining Plaintiffs onboard its vessels, b) Defendants policy of requiring Plaintiffs to perform duties onboard its vessels without pay, c) Defendants policies in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), 18 U.S.C. §1595, and the General Maritime Law of the United States, d) Defendants purposefully restraining Plaintiffs onboard its vessels because it did not want to repatriate Plaintiffs with chartered commercial flights, and e) Defendants carelessly misrepresenting to Plaintiffs they would paid after restraining Plaintiffs onboard Defendants' vessels without pay.

32.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice will be served by resolving the common disputes of the class members with Defendants in a single forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

33.     Defendants and many of the Plaintiffs herein have entered into employment contracts and/or Collective Bargaining Agreement's ("CBAs"), which call for arbitration of employment-related disputes between Defendants and the respective seafarers.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

34.     However, on or about March 17, 2020, Defendants unilaterally terminated employment contracts with all of its crew members and Plaintiffs herein. As such, any arbitration provisions and/or class action waiver provisions contained within the employment contracts and/or CBAs to which they were incorporated by reference are void.

### COUNT I – JONES ACT NEGLIGENCE – FAILURE TO REPATRIATE

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

35.     At all times material hereto, it was the duty of Defendants to repatriate Plaintiffs upon completion of Plaintiffs' contract.

36.     At all times material hereto, Defendants and/or its agents, servants, and/or employees acts and/or omissions caused, contributed and/or played a substantial part in bringing about Plaintiffs' injuries for reasons that include, but are not limited to, the following:

     a.  Failure to repatriate Plaintiffs upon completion of Plaintiffs' contract; and/or

     b.  Failure to adequately arrange transportation for Plaintiffs to be transported to their home country upon completion of Plaintiffs' contract; and/or

     c.  Other acts or omissions constituting a breach of the duty to use reasonable care under the circumstances which are revealed through discovery.

37.     At all times material hereto, Defendants knew or should have known of the foregoing conditions which caused and/or resulted in Plaintiffs' injuries and/or death and did not correct them. In the alternative, the foregoing conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care should have learned of them and corrected them.

38.     As a result of Defendants' negligence, Plaintiffs suffered pain and suffering, mental anguish. Plaintiffs also lost enjoyment of life,. Plaintiffs were also inconvenienced in the normal

pursuits and pleasures of life and suffered from feelings of economic insecurity caused by the mental anguish. Plaintiffs also suffered lost wages, income lost in the past, and their working abilities and/or earning capacities have been impaired.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendants and demand trial by jury.

## COUNT II – WAGES AND PENALTIES
### <u>46 USC § 10313</u>

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

39.     At all times material hereto, Plaintiffs were employed as seamen in the service of Defendants' vessels.

40.     At all times material hereto, Plaintiffs were employed in vessels engaged in voyages between a U.S. port and a foreign (non-U.S.) port and/or between U.S. ports in the Atlantic Ocean.

41.     While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

42.     The Contract of Employment (hereinafter referenced to as the "Contract") includes the terms of Plaintiffs' employments, including wages.

43.     The Contract was negotiated between Defendants and the Plaintiffs.

44.     Pursuant to their agreement with Defendants, Plaintiffs have a right to their full wages and/or severance pay.

45.     On or about the above stated date, Defendants unilaterally terminated Plaintiffs' contracts and informed Plaintiffs they would no longer be paid their earned wages while restraining Plaintiffs to the vessel(s).

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .
W W W . L I P C O N . C O M

46.     Defendants required crew members, including Plaintiffs, to continue working duties deemed essential, including, but not limited to cooking and preparing meals, cleaning, sanitizing, and/or maintaining the vessels, without paying these crew members.

47.     At all times material hereto, Defendants actions deprived Plaintiffs of their earned wages in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

48.     Defendants failed to properly pay the Plaintiffs their earned wages with respect to voyages that began, harbored, and/or finished in ports of the United States.

49.     Defendants have sole custody and control of Plaintiffs' wage records and personnel file. These documents are needed by Plaintiffs to show exact dates and amounts with respect to earned wages owed to Plaintiffs and deductions made from such earned wages.

50.     At all times material hereto, Plaintiffs made demands to Defendants for payment of all earned wages.

51.          At all times material, Defendants' withholding of wages was arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

52.     Defendants scheme to pay Plaintiffs nothing regardless of how many hours they actually worked amounts to a failure to pay earned wages pursuant to 46 U.S.C. §10313

53.     Under 46 U.S.C. Section 10313, Plaintiffs are entitled to their earned wages, and two days wages for each day payment is delayed.

        **WHEREFORE,** Plaintiffs and others similarly situated demand judgment against Defendants for all damages, wage penalties, attorney's fees, interest, and all other damages recoverable under the law, and demand trial by jury of all issues so triable.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

## COUNT III – WAGES AND PENALTIES
### 46 USC § 10504

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

54. At all times material hereto, Plaintiffs were employed as seamen in the service of Defendants' vessels.

55. At all times material, Plaintiffs worked in vessels engaged in voyages between ports in one U.S. State and ports in another U.S. State.

56. While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

57. The Contract of Employment includes the terms of Plaintiffs' employments, including wages.

58. The Contract was negotiated between Defendants and the Plaintiffs.

59. Pursuant to their agreement with Defendants, Plaintiffs have a right to their full wages and/or severance pay.

60. On or about the above stated date, Defendants unilaterally terminated Plaintiffs' contracts and informed Plaintiffs they would no longer be paid their earned wages while restraining Plaintiffs to the vessel(s).

61. Defendants required crew members, including Plaintiffs, to continue working duties deemed essential, including, but not limited to cooking and preparing meals, cleaning, sanitizing, and/or maintaining the vessels, without paying these crew members.

62. At all times material hereto, Defendants actions deprived Plaintiffs of their earned wages in violation of the Seaman's Wage Act (46 U.S.C. §10313, 46 U.S.C. §10504), and the General Maritime Law of the United States.

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

63.     Defendants failed to properly pay the Plaintiffs their earned wages with respect to voyages that began, harbored, and/or finished in ports of the United States.

64.     Defendants have sole custody and control of Plaintiffs' wage records and personnel file. These documents are needed by Plaintiffs to show exact dates and amounts with respect to earned wages owed to Plaintiffs and deductions made from such earned wages.

65.     At all times material hereto, Plaintiffs made demands to Defendants for payment of all earned wages.

66.        At all times material, Defendants' withholding of wages was arbitrary, willful and/or unreasonable, and therefore without sufficient cause.

67.     Defendants scheme to pay Plaintiffs nothing regardless of how many hours they actually worked amounts to a failure to pay earned wages pursuant to 46 U.S.C. §10504.

68.     Under 46 U.S.C. Section 10313, 46 U.S.C. Section 10504, Plaintiffs are entitled to their earned wages, and two days wages for each day payment is delayed.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment against Defendants for all damages, wage penalties, attorney's fees, interest, and all other damages recoverable under the law, and demand trial by jury of all issues so triable.


## <u>COUNT IV - BREACH OF CONTRACT</u>

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

69.     Under the General Maritime Law, Plaintiffs may bring *both* a Seaman's Wage Act claim and a breach of contract claim – as the two claims are not duplicative and the remedies of the two are not identical. *See Brown v. Royal Caribbean Cruises, Ltd.,* No. 99-11774, 2000 WL 34449703

*1, *9 (S.D.N.Y. Aug. 24, 2000). *See also Jose v. M/V Fir Grove,* 801 F. Supp. 358 (D. Org. 1992) (holding that Plaintiffs were allowed to claim breach of contract against Defendants - not subject to the Seaman's Wage Act's penalty provisions - based on Defendants' failure to abide by CBA terms); *Borcea v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144 (S.D.N.Y. 2002) (action for breach of contract under seafarers' CBAs as well as Seaman's Wage Act for federal statutory wage penalties); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (same).

70.     At all times material hereto, Plaintiffs were employed as seamen in the service of Defendants' vessels.

71.     While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

72.     The Contract of Employment includes the terms of Plaintiffs' employments, including wages.

73.     The Contract was negotiated between Defendants and the Plaintiffs.

74.     Pursuant to their agreement with Defendants, Plaintiffs have a right to their full wages.

75.     Defendants violated the Contract by forcing Plaintiffs to perform duties without compensating for such work.

76.     Pursuant to their agreement with Defendants, Plaintiffs have a right to their two months wages and/or two months Basic Pay Severance upon Defendants termination of Plaintiffs' Contract for any reason.

77.     Defendants violated the Contract by failing to pay Plaintiffs two months wages and/or pay two months Basic Pay Severance upon unilaterally terminating Plaintiffs' Contracts on or about the above stated date.

78.     Defendants did not perform its duties under the contract.

79.     Defendants acted in bad faith and in breach of the Plaintiffs Contracts.

80.     The breaches of the Plaintiffs' Contracts are direct and legal causes of Plaintiffs' damages.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment against Defendants for all damages, wage penalties, interest, and all other damages recoverable under the law, and demand trial by jury of all issues so triable.


## COUNT V – FORCED LABOR, PEONAGE
## 18 U.S.C. §1595

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

81.     Pursuant to 18 U.S.C. §1595 (a) an individual who is a victim of "forced labor" and/or "peonage" may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act of forced labor and/or peonage) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

82.     At all times material, Defendants as ship owner, exercised complete custody and/or control over Plaintiffs - seafarers who work isolated at sea and far from their home countries.

83.     Defendants implemented a plan to deprive Plaintiffs of their wages. Defendants terminated Plaintiffs employment contracts, but continued to require Plaintiffs to perform duties onboard its vessels.

84.     Defendants knowingly benefited, financially from the above plan. A plan which Defendants knew or should have known constituted forced labor and/or peonage.

85.     By terminating Plaintiffs' employment contracts, and forcing Plaintiffs to work certain duties without pay, Defendants financially benefited – incurring substantial savings from not

having to pay for the work.

86.     At all times material, by implementing the above described plan:

    a.  Defendants intended and, in fact coerced Plaintiffs to work effectively without pay, subjecting them to involuntary servitude;

    b.  Defendants wrongful conduct further intended, and in fact caused, Plaintiffs to believe that they had no alternative but to perform the forced labor;

    c.  Defendants knowingly benefited financially from the coerced labor and/or involuntary servitude of Plaintiffs.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment against Defendants for all damages recoverable under the law, including, but not limited to, attorney's fees and interest, and demand trial by jury of all issues so triable.

## COUNT VI - NEGLIGENT MISREPRESENTATION

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

87.     On or about March 9, 2020, Defendants made representations to crew members via a public statement from its CEO, Oneil Khosa, that "the safety, health and wellbeing of [its] crew will always remain [its] top priority…we are prepared to take all necessary preventative measures as circumstances."

    a.  In Defendants' public announcement to crew members, Defendants misrepresented that the safety, health and wellbeing of its crew members were its top priority.

88.     On or about March 17, 2020, Defendants made representations to crew members at a large meeting onboard the *Grand Celebration*, including Plaintiffs, that although Defendants were

Lipcon, Margulies, Alsina & Winkleman, P.A.
www.lipcon.com

unilaterally terminating Plaintiffs' employment contracts and restraining Plaintiffs onboard the subject vessel, Defendants would pay Plaintiffs a discounted amount while Plaintiffs were still onboard the subject vessel.

      a.   In Defendants' announcement to Plaintiffs on or about March 17, 2020, Defendants misrepresented that Defendants would pay Plaintiffs while Plaintiffs were still onboard the vessel(s) after March 17, 2020.

89.    At all times material hereto, the foregoing statements Defendants made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.

90.    At all times material hereto, Plaintiffs justifiably relied on the representations made by Defendants by continuing to attend crew drills, meetings, and otherwise continue to roam the vessel after the above representations were made and without being paid.

91.    As a direct and proximate result of Defendants' acts and/or omissions, as outlined above:

      a.   Plaintiffs suffered lost wages, income lost in the past, and lost employment opportunities.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendants and demand trial by jury.

## <u>COUNT VII – FALSE IMPRISONMENT</u>

Plaintiffs re-allege, incorporate by reference, and adopt paragraphs one (1) through thirty-four (34) above as though originally alleged herein.

92.    Plaintiffs requested to disembark the vessels to obtain employment elsewhere and/or earn income and/or to be with their families during a worldwide pandemic.

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.
WWW.LIPCON.COM

93.     Defendants purposefully and intentionally restrained Plaintiffs against their will on the vessels and did not permit Plaintiffs to leave the vessels to go ashore.

94.     Defendants falsely imprisoned Plaintiffs on the cruise ship and refused to repatriate and/or arrange for transportation because Defendants did not want to purchase commercial flights for Plaintiffs.

95.     Defendants' restrain of Plaintiffs was unlawful and unreasonable.

96.     As a direct and proximate result of Defendants' false imprisonment, as outlined above, Plaintiffs suffered pain and suffering, mental anguish. Plaintiffs also lost enjoyment of life,. Plaintiffs were also inconvenienced in the normal pursuits and pleasures of life and suffered from feelings of economic insecurity caused by the mental anguish. Plaintiffs also suffered lost wages, income lost in the past, and their working abilities and/or earning capacities have been impaired. Further, Plaintiffs were deprived of being with their families for months, resulting in further mental anguish.

        **WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendants and demand trial by jury.

Dated: August 4, 2020                        Respectfully submitted,

                                             LIPCON, MARGULIES,
                                             ALSINA & WINKLEMAN, P.A.
                                             *Attorneys for Plaintiffs*
                                             One Biscayne Tower, Suite 1776
                                             2 South Biscayne Boulevard
                                             Miami, Florida 33131
                                             Telephone No.: (305) 373-3016
                                             Facsimile No.: (305) 373-6204

                                             By:   *Michael Winkleman*
                                                   **MICHAEL A. WINKLEMAN**
                                                   Florida Bar No. 36719
                                                   mwinkleman@lipcon.com
                                                   **DANIEL W. GRAMMES**

Florida Bar No. 1010507
dgrammes@lipcon.com
**ANDREW S. FREEDMAN**
Florida Bar No. 091087
afreedman@lipcon.com
*Counsel for Plaintiffs*