UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-23223-BLOOM

DRAGAN JANICIJEVIC, on his own
behalf and on behalf of all other similarly
situated crew members working aboard
BAHAMAS PARADISE CRUISE LINE
vessels

   Plaintiffs,
v.               **CLASS ACTION**

CLASSICA CRUISE OPERATOR, LTD.,
PARADISE CRUISE LINE OPERATOR
LTD. INC.,

   Defendants.
_____/

**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, DRAGAN JANICIJEVIC, on his own behalf and on behalf of all other similarly situated crew members working aboard BAHAMAS PARADISE CRUISE LINE vessels (hereinafter collectively referred to as "Plaintiffs"), hereby sues Defendants, CLASSICA CRUISE OPERATOR, LTD., PARADISE CRUISE LINE OPERATOR LTD. INC., and for good cause allege:

**JURISDICTION AND PARTIES**

1. Plaintiff, DRAGAN JANICIJEVIC, is a citizen of Serbia.

2. Defendant, CLASSICA CRUISE OPERATOR, LTD. (hereinafter "CCO"), is a foreign profit corporation incorporated in the Bahamas, has a principal place of business in New York, and is authorized to do and does transact business at its Florida office: 431 Fairway Dr, Suite 300, Deerfield Beach, Florida, 33441.

- 1 -

3. Defendant, PARADISE CRUISE LINE OPERATOR LTD. INC. (hereinafter "PCLP"), is a foreign profit entity with its principle place of business at 431 Fairway Dr, Suite 300, Deerfield Beach, Florida, 33441.

4. At all times material hereto, Defendants, CCO, and PCLP, collectively owned, operated, managed, maintained and/or controlled the following subject cruise vessels: *Grand Celebration* and *Grand Classica* (hereinafter the "vessels"). Accordingly, Defendants, CCO and PCLP, will be collectively referred to as "Defendants".

5. The matter in controversy exceeds the required jurisdictional amount, exclusive of interest and costs, and is a class action brought under this Honorable Court's jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court, the Seaman's Wage Act (46 U.S.C. § 10313, 46 U.S.C. §10504), and 18 U.S.C. §1595.

   a. In the event that class status is not certified, Plaintiff requests an advisory jury trial pursuant to the remedies saved under the Saving to Suitors Clause of 28 U.S.C. §1333. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 454-55 (2001) ("Trial by jury is an obvious… example of the remedies available to suitors."); *see also Suzuki of Orange Park, Inc. v. Shubert*, 86 F.3d 1060, 1063 (11th Cir. 1996). It is within the discretion of the court to allow for an advisory jury in an admiralty or maritime claim.

6. Defendant(s), at all times material, personally or through an agent:

   a. Operated, conducted, engaged in or carried out a business venture in this state and/or county and/or had an office or agency in this state and/or county;

   b. Were engaged in substantial business activity within this state;

   c. Operated vessels in the waters of this state;

      d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193; and/or

      e. The acts of Defendant(s) set out in this Complaint occurred in whole or in part in this county and/or state.

7. Defendants are subject to the jurisdiction of the Courts in this District.

8. The causes of action asserted in this Complaint arise under U.S. General Maritime Law.

9. Defendants' *Grand Celebration* flies a flag of convenience of the Bahamas.

10. Defendants' *Grand Classica* flies a flag of convenience of Portugal.

11. At all times material hereto, Defendants operated the vessels in navigable waters.

12. At all times material hereto, an employer-employee relationship existed between Defendants and Plaintiffs, as Defendants controlled Plaintiffs' work aboard the vessel *Grand Celebration*.

      a. Plaintiff DRAGAN JANICIJEVIC was employed by Defendants to work on the *Grand Classica* as a Casino Dealer.

13. At all times material hereto, Plaintiffs were "seamen" aboard the respective vessels to which they were assigned by Defendants.

14. "Seamen from the start were wards of admiralty." *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 355 (1971) (*citing Robertson* v. *Baldwin*, 165 U.S. 275, 287 (1897)). In 1823, Justice Story declared: "Every Court should watch with jealousy an encroachment upon the rights of a seaman, because they are unprotected and need counsel; because they are thoughtless and require indulgence; because they are credulous and complying; and are easily overreached. But Courts of maritime law have been in the constant habit of extending towards them a peculiar, protecting favor and guardianship. They are emphatically the wards of the admiralty." *Harden v. Gordon*, 11 Fed. Cas. 480 (No. 6047) (C.C. Me 1823). "From the earliest times maritime nations have

recognized that unique hazards, emphasized by unusual tenure and control, attend the work of seafarer." *See Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 727 (1943). The *Aguilar* Court further held: "the restrictions which accompany living aboard ship for long periods at a time combine with the constant shuttling between unfamiliar ports to deprive the seaman of the comforts and opportunities for leisure, essential for living and working that accompany most land occupations." *Id*. at 728.

15. In *Chandris, Inc. v. Latsis*, the U.S. Supreme Court reaffirmed the longstanding principle that seafarers are wards of Admiralty Courts, given the "feature of the maritime law that compensate[es] or offset[s] the special hazards and disadvantages to which they who go down to sea in ships are subjected." 515 U.S. 347, 355 (1995).

16. Accordingly, the Admiralty Courts have a rich tradition of protecting seafarers, which flows from the uniquely abhorrent conditions seafarers face at sea. And it is not just the Courts which recognize the need to protect seafarers, as "[t]he policy of Congress, as evidenced by its' legislation, has been to deal with [seafarers] as a favored class." *Bainbridge v. Merchants' & Miners' Transp. Co.,* 287 U.S. 278 (1932).

17. Plaintiffs, the Class Representative and Class Members herein, are and/or were crew members who worked for Defendants aboard Defendants' vessels and many of whom are still owed contractual wages from Defendants.

18. Because Defendants unilaterally terminated employment contracts with all of its crew members and Plaintiffs herein, any arbitration provisions contained within the employment contracts to which they were incorporated by reference are void.

**GENERAL ALLEGATIONS**

19. This Class Action lawsuit deals with Defendants' failure to timely abide its contractual

agreements with its crewmembers mainly to pay the required two (2) month severance as a result of the unexpected COVID crisis. Pursuant to Plaintiffs' employment contracts, Defendants are required to pay Plaintiffs: (1) two months of wages and/or Basic Pay Severance upon Defendants terminating Plaintiffs' employment contracts, and (2) any wages for work performed while they remained on the ship.

20. Outlined below is a timeline of events relevant to this Class Action lawsuit against Defendants. This timeline supports all claims asserted herein on behalf of the entire class:

   a. October 12, 2019 (*Grand Classica*) - Plaintiff DRAGAN JANICIJEVIC boards the *Grand Classica* as a crew member.

   b. March 8, 2020 – The CDC warns the public to avoid traveling on cruise ships, as several vessels across the globe have been quarantined due to the spread of COVID-19.

   c. On or about March 9, 2020 – In response to the CDC travel advisory the day before, Oneil Khosa, Defendants' CEO, stated the following: "We want to reassure travelers that the U.S. State Department's recommendation is just that, a recommendation, and there are currently no restrictions for those who choose to travel by cruise ship." "The safety, health and wellbeing of our guests and crew will always remain our top priority and while we continue to monitor this situation closely – maintaining communication with the World Health Organization and Centers for Disease Control and Prevention – we firmly believe the risk to our guests and crew members remains very low. We will not permit any persons who have traveled or transited from countries currently identified in the CDC list. Additionally, we have a Health Declaration in place, and we are prepared to take all necessary preventative measures as circumstances indicate."

   d. March 14, 2020 – The CDC issued its first No Sail Order. The No Sail Order is/was applicable to cruise ship operators, like Defendants herein, and provided science updates known to date pertaining to the explosive contagiousness associated with COVID-19 and how the virus presented dangerous conditions to passengers and crew members aboard cruise ships, like the vessels named herein.[1] No one could predict how long the no sail order would stay in effect and the fact that the ships could not sail, had a very detrimental financial impact on the Defendants' ability to pay all of the crew members their required 2 month severance..

---

[1] *See* Centers for Disease Control and Prevention, *March 14, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/signed-manifest-order_031520.pdf.

- 5 -

e. <u>March 14, 2020</u> – Defendants suspended all of its future cruises.

f. <u>March 15, 2020 (*Grand Classica* and *Grand Celebration*)</u> – Based upon the binding CDC Guidelines and Coast Guard regulations regarding specific restrictions placed upon all persons due to COVID, U.S. Customs and Border Protection required Defendants to collect and submit all crew members' I-95 landing permits. Defendants immediately started to repatriate many of the crew members, while some crew members requested to remain on board the ships. No one at that time expected the no sale ship closures to last as long as they eventually have.

g. <u>On or about March 16, 2020 (*Grand Classica* and *Grand Celebration*)</u> – Defendants transferred crew members, including Plaintiff, from the *Grand Classica* to the *Grand Celebration.* As a result of the COVID crisis, Defendants purchased numerous PPE and made them available to the crew when requested.

h. <u>On or about March 17, 2020</u> – Defendants management holds a large, mandatory crew meeting in the theater aboard the *Grand Celebration*. At this meeting, majority owner, Kevin Sheehan, announced that based upon the government issued no sail order, and the dramatic economic effect on the company from not being able to sail, the Defendants were not able to fully compensate, all of the crew's two month severance packages under their contracts.

i. <u>March 18, 2020 (*Grand Celebration*)</u> – Most of the crew members were able to be repatriated to their home country. Some of the crew requested to stay on board, because no one could predict how long the no sail order was to stay in place. A handful of crew members that desired to stay on the *Grand Celebration*, also requested to perform some tasks, such as cooking to pass the time on the ship. Defendants tried their best to send all crew home, but multiple countries' borders were closed, the U.S. government placed many travel restrictions on commercial travel, and the Defendants were not financial able to charter private planes for every crew member to return home. A few of those crew members that performed some type of work while on the ship were not fully paid for such work by the Defendants, as a result of the dire financial situation on the Defendant, as a direct result of the no sail order.

j. <u>On or about March 19, 2020 (*Grand Celebration*)</u> – Many of the few remaining crew members on the ships, only about 180-200 crew members, requested Defendants to provide for repatriation and/or allow them off the vessel throughout their time on the vessel, including to this date. Defendants represent to crew members, including Plaintiffs, that it is doing everything it can in order to repatriate crew members. Based on contemporaneous emails, Defendants were working their best to arrange for those crew members who wanted to return home, to get home, but the U.S. government still had many travel restrictions on commercial travel.

k. <u>April 9, 2020</u> – The CDC issued its second No Sail Order.[2]

## CLASS ACTION ALLEGATIONS

21. This action is brought by Plaintiff on his own behalf, and on behalf of all others similarly situated, under the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

22. At all times material hereto, Plaintiffs, the Class Representative and Class Members herein, are and/or were subject to delay in the payment of their contractual wages, and nonpayment of their wages as crew members of Defendants' vessels.

23. The class so represented by the Plaintiff in this action, and of which Plaintiff is a member, consists only of: all seafarer-employees who were employed and physically present on the Cruise Defendants' vessels *Grand Celebration* anytime between March 18, 2020 until August 20, 2020. **"Seafarer-employees" does not include deck and engine employees, independent contractors, and Defendants' corporate officers or corporate directors.** All of **those workers were already sent home from the ship and had different contracts. All of the remaining crew members (classified as hotel department workers) all had identical contracts, especially regarding the "arbitration" provisions and the promise to pay two (2) months of wages.**

24. This class of crew members suffered lost wages and lost employment opportunities as a result of Defendants' failure to pay Plaintiffs' wages and breaching Plaintiffs' employment contracts.

25. The exact number of members of the proposed class that remained on the *Grand Celebration* that were either not paid their owed contractual 2 months severance wages, and/or fees for other services performed while remaining on the ship, is believed to be 276 members. The class is so numerous that joinder at this anticipated amount of all members is impracticable. Thus,

---

[2] *See* Centers for Disease Control, *April 9, 2020 No Sail Order* https://www.cdc.gov/quarantine/pdf/No-Sail-Order-Cruise-Ships_Extension_4-9-20-encrypted.pdf.

this action satisfies the requirements of Rule 23(a)(1).

26. There are common questions of law and fact that relate to and effect the rights of each proposed member of the class and the relief sought is common to the entire class. The same breach of contract on the part of Defendants caused the same or similar injury to each class member. All class members seek damages under a breach of the their employment contracts,. Accordingly, this action satisfies the requirement of Rule 23(a)(2). Plaintiffs and all class members have the identical contract provisions regarding the payment of two (2) months wages and for continued wages earned for while continuing to work on board the ship.

27. The claims of Plaintiff is typical of the claims of the putative class, in that the claims of all putative class members, including the named Plaintiff, depend upon a virtually identical contract and showing of the acts and omissions of Defendants giving rise to the right of Plaintiff to the relief sought herein. Defendants were at all times material breached the identical provisions of the employment contract to the detriment of the entire class of Plaintiffs. Accordingly, this action satisfies the requirements of Rule 23(a)(3).

28. Plaintiff is the representative party for the class, and is able to, and will, fairly and adequately protect the interests of the class. There is no conflict between Plaintiff and other members of the class with respect to this action, or with respect to the claims for relief herein. Lipcon, Margulies, Alsina & Winkleman, P.A., are experienced and capable in the field of maritime claims for cruise ship passenger and crew member injuries and lost wages owed to crew members, including class actions, and have successfully represented claimants in other litigation of this nearly exact nature. Further, the Moskowitz Law Firm PLLC, is a preeminent class action law firm representing plaintiffs against insurance companies, mortgage companies, cruise lines, consumer product sellers, and spearheaded the litigation and resolution of over 30 nationwide class

actions for homeowners against the major mortgage providers in the country. The undersigned law firms will actively conduct and be responsible for Plaintiff's case herein. Accordingly, this action satisfies the requirement of Rule 23(a)(4).

29.     This action is properly maintained as a class action under Rule 23(b)(3) inasmuch as questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  In support of the foregoing, Plaintiffs allege that common issues predominate and can be determined on a class-wide basis regarding: (a) Plaintiff and every class member has an **identical contractual provisions** regarding: (1) the payment of wages, and (2) the requirement for arbitration proceedings.

30.     For purposes of this lawsuit "wages" shall mean payment of base wages, overtime wages, extra overtime wages, penalty wages under 46 USC § 10313, 46 USC § 10504, 18 USC § 1595, severance, tips, gratuities, or other compensation in accordance with contract law set forth in the contract of employment;  any promises to pay any monies whatsoever arising out or in connection with the employer-employee relationship and any other compensation of whatever kind or in any way arising from or connected to the Plaintiff and the class members' employment with the Defendants between March 18, 2020 until August 20, 2020 and owed by the Defendants to Plaintiff and the Class Members who work or worked aboard *the Grand Celebration* for at least one day between March 18, 2020 and August 20, 2020.

31.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because it is unlikely that individual plaintiffs would assume the burden and the cost of this complex litigation, and Plaintiff is not aware of any class members who are interested in individually controlling the prosecution of a separate action. The interests of justice

will be served by resolving the common disputes of the class members with Defendants in a single forum, and individual actions by class members, many of whom are citizens of different states would not be cost effective. The class consists of a finite and identifiable number of individuals which will make the matter manageable as a class action.

32.     Defendants and many of the Plaintiffs herein have entered into identical employment contracts, which all call for arbitration of employment-related disputes between Defendants and the respective seafarers.

## COUNT I - BREACH OF CONTRACT

33.     Under the General Maritime Law, Plaintiffs may bring *both* a Seaman's Wage Act claim and a breach of contract claim – as the two claims are not duplicative and the remedies of the two are not identical. *See Brown v. Royal Caribbean Cruises, Ltd.,* No. 99-11774, 2000 WL 34449703 *1, *9 (S.D.N.Y. Aug. 24, 2000). *See also Jose v. M/V Fir Grove,* 801 F. Supp. 358 (D. Org. 1992) (holding that Plaintiffs were allowed to claim breach of contract against Defendants - not subject to the Seaman's Wage Act's penalty provisions - based on Defendants' failure to abide by CBA terms); *Borcea v. Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144 (S.D.N.Y. 2002) (action for breach of contract under seafarers' CBAs as well as Seaman's Wage Act for federal statutory wage penalties); *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (same).

34.     At all times material hereto, Plaintiffs were employed as seamen in the service of the *Grand Celebration*.

35.     While in the service of the ship, Plaintiffs performed all the work required of them and carried out the orders given to them by their superiors.

36.     The Contract of Employment includes the terms of Plaintiffs' employments, including wages.

37. The Contract was negotiated between Defendants and the Plaintiffs.

38. Pursuant to their agreement with Defendants, Plaintiffs have a right to their full wages.

39. Defendants violated the Contract by forcing Plaintiffs to perform duties without compensating for such work.

40. Pursuant to their agreement with Defendants, Plaintiffs have a right to their two months wages and/or two months Basic Pay Severance upon Defendants termination of Plaintiffs' Contract for any reason.

41. Defendants violated the Contract by failing to pay Plaintiffs two months wages and/or pay two months Basic Pay Severance upon unilaterally terminating Plaintiffs' Contracts on or about the above stated date.

42. Defendants did not perform its duties under the contract.

43. Defendants breached the Plaintiffs Contracts.

44. The breaches of the Plaintiffs' Contracts are direct and legal causes of Plaintiffs' damages.

**WHEREFORE,** Plaintiffs and others similarly situated demand judgment for all damages recoverable under the law against the Defendants and demand trial by jury.

Dated: November 30, 2020                                    Respectfully submitted,

By: */s/ Michael A. Winkleman*                         By: */s/ Adam M. Moskowitz*
MICHAEL A. WINKLEMAN                            Adam Moskowitz, Esq.
Florida Bar No. 36719                                      Florida Bar No. 984280
mwinkleman@lipcon.com                              adam@moskowitz-law.com
DANIEL W. GRAMMES                                 Howard M. Bushman, Esq.
Florida Bar No. 1010507                                 Florida Bar No. 0364230
dgrammes@lipcon.com                                 howard@moskowitz-law.com
ANDREW S. FREEDMAN                             **THE MOSKOWITZ LAW FIRM, PLLC**
Florida Bar No. 091087                                   2 Alhambra Plaza
afreedman@lipcon.com                                  Suite 601
**LIPCON, MARGULIES,**                              Coral Gables, FL 33134
**ALSINA & WINKLEMAN, P.A.**                 Telephone: (305) 740-1423
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard

Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed November 30th, 2020, with the Court via CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
Adam Moskowitz, Esq.
Florida Bar No. 984280
The Moskowitz Law Firm, PLLC