**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO: 20-23223-CIV-BLOOM**

DRAGAN JANICIJEVIC, on his own
behalf and on behalf of all other similarly
situated crew members working aboard
BAHAMAS PARADISE CRUISE LINE
vessels

       Plaintiff,

          v.

CLASSICA CRUISE OPERATOR, LTD.,
PARADISE CRUISE LINE OPERATOR
LTD. INC.,

       Defendants.

_____/

**PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS**
**ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**

                **The Moskowitz Law Firm, PLLC**
                2 Alhambra Plaza, Suite 601
                Coral Gables, FL 33134
                Telephone: 305 740-1423
                Adam Moskowitz
                Howard Bushman
                Joseph Kaye

                and

                **Lipcon, Margulies, Alsina & Winkleman, P.A.**
                One Biscayne Tower, Suite 1776
                 2 South Biscayne Boulevard
                Miami, Florida 33131
                Telephone No.: (305) 373-3016
                Facsimile No.: (305) 373-6204
                Michael Winkleman
                Daniel W. Grammes
                Andrew S. Freedman
                *Counsel for Plaintiffs*

Plaintiff, Dragan Janicijevic, hereby files this unopposed, renewed Motion for Preliminary Approval of Class Action Settlement Agreement and for Certification of the Settlement Class pursuant to Federal Rule of Civil Procedure 23 and states:

## I.   INTRODUCTION

Plaintiff initiated this action on August 4, 2020, alleging against Defendants, Classica Cruise Line Operator, Ltd. and Paradise Cruise Line Operator, Ltd. Inc. (collectively "Paradise"), seven counts, including Jones Act Failure to repatriate, Wages and Penalties under 46 USC §§ 10313 and 10504, Breach of Contract, Forced Labor and Peonage under 18 U.S.C. § 1505, Negligent Misrepresentation and False Imprisonment. [ECF 1]. The Parties agreed to mediate the case on August 18, 2020. In the discussions leading up to, and during, mediation, Defendants provided factual information and confirmatory discovery to Plaintiff demonstrating their strong defenses, including some factual inaccuracies on which some of Plaintiff's claims were premised. After lengthy discussions prior to mediation, a twelve (12) hour mediation and additional extensive negotiations during the week following mediation, the Parties were able to achieve a settlement that compensated the settlement class to nearly one hundred percent (100%) of the wages to which they are entitled pursuant to the viable claims in the Complaint.

Based on the confirmatory discovery and class action settlement, Plaintiff moved the Court for an order granting preliminary approval of the class [ECF 21] but did not file an amended complaint to better state the allegations with the actual facts ascertained after discovery. Additionally, Defendants did not file defensive motions or an answer and affirmative defenses and neither party filed the confirmatory discovery and evidence demonstrating Defendants' strong defenses and the lack of factual basis for many of Plaintiff's claims. As a consequence, at the November 5, 2020 preliminary approval hearing, this Court discussed certain concerns the Court had regarding the settlement, including information that should be in the court record and the differences between putative class members' claims that might preclude certification under Rule 23(b). This Court, therefore, denied Plaintiff's preliminary approval motion *without prejudice* so that the Parties could continue to work on the Court's concerns and requests. [ECF 29].

The Parties gave careful consideration to each and every comment made by the Court. Plaintiff has since filed a Third Amended Complaint that much more accurately reflects the claims sought to be certified and the withdrawal of claims that were proven after discovery to be factually inaccurate. [ECF 32–34]. Defendants have also filed a Motion to Compel Arbitration [ECF 35],

their Answer and Affirmative Defenses [ECF 36] and provided the detailed declaration of Kevin Sheehan with corresponding evidence addressing some of these factual inaccuracies in the pleadings, which declaration is attached to this Motion as **Exhibit 1**, The mediation and Defendant's confirmatory discovery declaration provided Plaintiff with sufficient information and evidence to indicate that many of the allegations were not accurate and certainly explains why this proposed Settlement is an excellent opportunity for all settlement class members, in light of: (1) the actual damages to the proposed Class for the viable claims, and (2) the very strong arbitration motion and other defenses. It was certainly the Parties' fault for not presenting this full picture to the Court when the Parties first sought preliminary approval.

The Parties, as suggested, reconvened their Settlement discussions and submit to the Court this enhanced and much clarified proposed Settlement for preliminary approval. The enhancements and clarifications include, but are not limited to, the following:

1. An upfront payment of the entire Settlement amount, instead of a phased payment;

2. A Third Amended Complaint that accurately reflects the claims sought to be certified;

3. A sworn declaration from Defendants explaining the relevant background facts and information concerning the crew and how the COVID-19 pandemic directly caused a dramatic and unprecedented financial burden on Defendants;

4. The removal of the lien on the subject vessel;

5. Certification is sought as to breach of contract only;

6. Clarifying that while all crewmembers may have slightly different contracts, each contract has the same two wage and severance clauses that are the subject of the Class Action Settlement;[1]

7. Clarifying the class definition to make clear that Class Members need only have worked on either ship, ***not both***, for at least one day during the settlement class period and the precise relief to be certified;

8. Clarifying the Wage Type 2 payments are a minimum of $1,000;

9. Capping the notice and administration costs at $10,000, which will be paid from the

---

[1] Paradise used two different contracts for crew during the class period, both of which had the exact same wage clauses and severance clauses. Compare Plaintiff's employment contract attached as **Exhibit 2** at paragraphs 10 and 21 with exemplar crew contract attached as **Exhibit 3** at paragraphs 10 and 22. The clauses that are the subject of class certification are virtually identical.

class counsels' attorneys' fees and costs award approved by the Court; and

10. ***Even though this pandemic posed, hopefully, a once-in-a-lifetime extraordinary event that caused the U.S. Government to order all cruise lines to stop sailing, Defendants have agreed to add specific relief*** in the form of administrative policy☐ as the Court suggested☐ to ensure that should such a catastrophic event re-occur, there is a mechanism to work through it with the crew so that the issues raised in this matter do not occur again.

***Simply put***, the class will receive "100 percent of their possible damages", in that there are two types of damages that will be recoverable under the proposed Settlement to the Class to share in the **$612,500 Class Fund**:[2]

- ▪ **(1st Category/ Subclass)**: Each of the 276 Class Members are required to be paid 2-months' severance pursuant to their contracts unless their contract was due to expire within thirty (30) days of termination. The employment contracts contain an identical severance clause (even if and when the crew member was immediately sent home) and the average 2-month severance is $1,858.00 ***(for a total of $512,808.00),*** and

- ▪ **(2nd Category/Subclass)**: Discovery confirmed that there were only 6 crew members that continued to perform some "services" or "work" (such as a cook, etc.) during the class period, for which they have not been paid, which is not more than a few hundred dollars each (for a total of ***no more than $5,000***).

While the severance amount may vary by crewmember (depending on the rate of each crewmember's pay and if a crewmember was in the last month of his or her contract when that crewmember would not be entitled to severance pursuant to his or her contract), a simple mathematical calculation can be easily accomplished by a review of Defendants' records to confirm the amount of each claim. As for payment to those few crew who worked, that too can be easily calculated based on the contracts.

This Settlement is the product of exhaustive negotiations, including Zoom and telephonic mediation sessions before nationally recognized mediator Rodney Max, Esq., which will provide each and every crew member approximately 100% of the damages that they could have received

---

[2] Class Counsel is seeking approval from the Court for 30% in attorneys' fees and costs, which totals $262,500, to be paid by Defendants, without having any effect on the $612,500 set aside specifically for the recovery to the Class.

in this litigation if they recovered 100% of their damages at any certified trial with all of the ensuing risks, including the real potential stay or dismissal of this matter in favor of arbitration as the Defendants contend is required in this context and the other defenses raised by Defendants. [ECF 35-36]. The Defendants' substantially same arbitration clause has been upheld by this Court on numerous occasions, under these same facts and while the crew would eventually receive compensation through arbitration, class action relief is a much faster and better way in which to provide it to the entire putative class. *See, e.g., Maglana v. Celebrity Cruises Inc.*, No. 1:20-22133-CIV, 2020 WL 6588561 (S.D. Fla. Oct. 7, 2020) (Martinez, J.) (granting motion to compel arbitration and dismissing action).

Under the proposed Amended Class Action Settlement Agreement and Release ("Settlement Agreement"), the Defendants will create a common fund of $875,000.00 to resolve this dispute which will be used to make cash payments to crew members for contractual severance and wages for time worked without pay. Accordingly, Plaintiff requests entry of an Order granting preliminary approval of the class action settlement as set forth in the Parties' Settlement Agreement (finding that the proposed settlement "falls within the range of reasonableness"), preliminarily certifying a nationwide class for settlement purposes, and approving notice to all Settlement Class Members for their comment. Defendants dispute the factual and legal claims made by Plaintiff, have agreed to the Settlement Class only, but disagree that the Class could otherwise be certified. *See* Defendants' position on the lawsuit in the attached Settlement Agreement, which is incorporated and adopted herein as if set forth in full for purposes of brevity. *See* **Exhibit 4**. Defendants do not oppose the relief sought herein based on the Settlement. *Id.*

The Settlement Agreement's benefits were the result of rigorous, arm's-length negotiations by the Parties and their counsel under the direction of a distinguished mediator, Rodney Max, Esq. *See* Declaration of Rodney Max dated September 8, 2020 (hereinafter "Max. Decl.") (attached as **Exhibit 5**). Notice of this Settlement will be disseminated to Class Members via direct mail, email, and the establishment of a settlement website.

Undersigned counsel are well-positioned to evaluate and negotiate this Settlement because they have been investigating and litigating seafarer wage claims for many years. Indeed, Lipcon, Margulies, Alsina & Winkleman, P.A., are experienced and capable in the field of maritime claims for cruise ship passenger and crew member injuries and lost wages owed to crew members, including class actions, and have successfully represented claimants in other litigation of this

nearly exact nature. Further, the Moskowitz Law Firm PLLC, is a nationally recognized preeminent class action law firm representing plaintiffs against insurance companies, mortgage companies, cruise lines, consumer product sellers, and spearheaded the litigation and resolution of over 30 nationwide class actions recovering over 4.2 billion dollars for 5.2 million homeowners against the major mortgage providers in the country. Further, the informal discovery in this action included the production of financial data and information related to the Defendants' business practices. Plaintiff and the Settlement Class faced significant hurdles in litigating their claims to resolution, including arbitration. As such, and given the immediate and substantial benefits the Settlement will provide, Plaintiffs respectfully suggest that there is no question that the Settlement is "within the range of reasonableness" and warrants preliminary approval.

## II.   FACTUAL BACKGROUND

This Class Action lawsuit alleged Defendants' failure to pay severance and wages to those crew who worked pursuant to the contractual agreements with crewmembers who were not paid due to the extreme financial hardship caused by the COVID-19 pandemic, which prevented cruise ships from sailing. Plaintiff claims that pursuant to identical wage and severance clauses in Plaintiff's and the other hotel department crew's employment contracts, Defendants are required to pay Plaintiff and the Class two months of wages as severance upon termination unless the crewmember was within thirty (30) days of the end of his or her contract. When the government took the extraordinary step of halting all sailings due to the COVID-19 global pandemic, Plaintiff alleges that Defendants could not pay Plaintiff and the Class severance and wages for the small amount of work performed by a handful of employees (six), that were still on the *Grand Celebration*. After filing the original Complaint, and based on Plaintiff's counsel's previous experience in successfully settling class claims against cruise operators, the Parties agreed in August 2020 to commence an early mediation. The Parties retained Rodney Max, and began a series of telephonic mediation sessions, including an all-day, nine hour Zoom mediation session on August 18, 2020. The Parties could not reach a resolution on August 18, but further discussions continued and resulted in the revised class action settlement before the Court.

Plaintiff originally brought multiple claims for repatriation, negligent misrepresentation, forced labor and false imprisonment as well as expanded claims for lack of payment of wages. As discussed above, Defendants contested the factual and legal predicate for Plaintiff's claims and the number of class members at issue. Through the mediation process, Defendants provided evidence

of Defendants' actions regarding many of Plaintiff's original allegations regarding repatriation, negligent misrepresentation, forced labor and false imprisonment, as well as the expanded non-payment of wages claims. Additionally, discovery showed that far fewer Class Members were affected than originally suspected. Defendants had previously provided Plaintiffs with a declaration, but have since recently formalized and detailed its evidence in a comprehensive declaration that is now provided to the Court. *See* Exhibit 1. Defendants have further asserted that individual arbitrations would be required and a class would not be susceptible to certification for claims (now withdrawn) for many of the reasons addressed by the Court at the preliminary approval hearing. *See* Exhibit 4; [ECF 35–36]. While Plaintiffs would contest the arbitration demands, it would be a difficult hurdle for Plaintiff and the class to overcome.

Among other things, specifically, Defendants maintain that they went to extraordinary lengths to repatriate crew members, but were severely constrained by CDC restrictions, immigration restrictions, and general safety issues. *See* Exhibit 1 at ¶ 22 ("Countries were closing borders, airports were closing, flights were canceled, and the way in which crew were to be repatriated was suddenly and severely impacted by the various countries where crew were able to disembark passenger cruise vessels."). Further, not all Class Members were on the subject vessels for the entire class period. For example, the named Plaintiff signed off the ship on June 21, 2020. *Id*. at ¶ 44. Other putative Class Members were repatriated between March and August, depending on government restrictions, flights and other restrictions. *Id.* at ¶ 34. Finally, the number of Class Members at issue were not the estimated thousands of crew members, but instead 276 crew members who were not paid their contractual two-month severance payments, as well as a handful of Crew Members (6) that performed some work and were not paid. *See* [ECF 36] at ¶ 25.

Therefore, Plaintiff based his settlement demands upon the confirmed discovery to avoid protracted and expensive litigation and arbitration, for settlement purposes only. *Id.* The Parties fully resolved this matter, after days of discussions, and executed a Term Sheet on August 21, 2020. That same day, the Settling Parties announced their settlement and filed a joint motion to stay the case while the Settling Parties formalized their Settlement Agreement. [ECF 12]. Pursuant to the joint request to stay, the Court administratively closed this case on August 24, 2020 "without prejudice to the parties to file a settlement agreement for the Court's consideration and/or appropriate dismissal documentation." [ECF 13]. The Parties subsequently finalized and executed the Settlement Agreement and moved for preliminary approval.

At the hearing on preliminary approval, because Defendants had yet to answer the Complaint, this Court had many appropriate questions and suggestions regarding the specifics of the proposed Settlement, and the reasons for the agreement to resolve this matter for the amounts suggested. Accordingly, the Court denied the request for preliminary approval *without prejudice* [ECF 29] and requested further information and materials. Accordingly, on November 30, 2020, Plaintiffs filed a Third Amended Complaint detailing the allegations which corresponded to the confirmed discovery received to date. [ECF 34]. On December 11, 2020, Defendants filed a Motion to Compel Arbitration [ECF 35] and an Answer and affirmative defenses to the Complaint [ECF 36]. The Motion to Compel Arbitration is currently pending. The Parties have completed further protracted negotiations and now are pleased to provide the Court with a revised proposed settlement, and with specific information to further support the fairness of the proposed Settlement.

**III.   THE REVISED SETTLEMENT TERMS AND AGREEMENT**

### A. *The Proposed Settlement Class*

All seafarer-employees who were physically present on the *Grand Celebration* for at least one day anytime between March 18, 2020 until August 20, 2020 and were (1) terminated such that severance is due under their employment contracts and/or (2) were employed and performed a designated job at Defendants' request. "Seafarer-employees" ***shall not include*** deck and engine employees and independent contractors, Cruise Defendants' corporate officers or corporate directors.[3]

### B. *Monetary Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary relief. *See* Exhibit 4 at ¶ 2.45. A settlement fund in the amount of $875,000.00 will be created to provide cash payments to Settlement Class Members for contractual wages and for time worked without pay. The Settlement Fund will be allocated as follows: (1) first it will be used to pay any attorneys' fee and expense award to Co-Lead Class Counsel (which will seek 30% for a total of $262,500) and any incentive award to Class Representative that are approved by this Court in accordance with the terms of the Settlement Agreement, and any and all administrative costs (the result is the "Net Settlement Fund"); (2) The Net Settlement Fund ($612,500) will be divided and distributed as individual allocations to the Settlement Class Members who do not opt out. If the claims received exceed the Net Settlement Fund, each Settlement Class Member shall have their

---

[3] No deck and engine crew members went unpaid.

amounts reduced pr*o rata.* Any remaining Net Settlement Funds that remain after final approval and distribution to valid and approved class members shall revert to Defendants.

Confirmatory discovery has shown that this relief is close to 100% of the potential Class Member damages which could have been obtained at trial. ***The material records reveal that the average two months' severance for each class member is $1,858.00, which multiplied by the 276 crew member putative class members equals a maximum of $512,808.00.*** Additionally, there is a minimum of $1,000.00 per class member for any and all work performed on Defendants' vessels during the claims period. Exhibit 4 at ¶ 4.3, "Wage Claim Type 2." The confirmatory discovery revealed there is a small number of class members ***(6 crew employees)*** that should apply for Wage Claim Type 2. Accordingly, there is no question that the Settlement is "within the range of reasonableness" and warrants preliminary approval, especially in light of the pending Motion to Compel Arbitration, which would require multiple arbitrations.

### C.  *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release the Defendants, as well as all other entities included in the definition of "Released Parties" set forth in the Settlement Agreement (Exhibit 1 at ¶¶ 2.36 and 15), from:

> Cruise Defendants and any and all of their respective past, present and future parents, subsidiaries, affiliated companies, corporations, divisions, joint ventures, and entities in which Cruise Defendants have a controlling interest, and any and all of their respective past, present and future officers, directors, managers, general and limited partners, members, principals, insurers, insureds, employers, employees, consultants, independent contractors, shareholders, attorneys, advisors, predecessors, successors, associates, related entities, servants, assigns, representatives and agents.

### D.  *Class Notice*

Class notice will be disseminated directly to Class Members via direct mail or email at the addresses provided by Defendants' employment records at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibit 2 assuming it is approved by the Court. *Id.* ¶¶ 2.27 and 7. The notice will be sent within thirty (30) days of the entry of the Preliminary Approval Order. *Id.* ¶ 7.1. The Settlement Administrator will also establish a website on which Settlement Class members may review the Settlement Agreement and its exhibits, and for those Class Members who must file a claim, the ability to file a Claim Form online. *Id.* ¶ 7.3. Settlement Class Members may opt out or object by following the prescribed process. *Id.* ¶ 1.

Due to the fact that there are only approximately 276 crew members in the Settlement Class, to save the substantial costs of administration by a third party, the law firm of Foreman Friedman, P.A., will primarily administrate the settlement in good faith and Defendants will absorb that cost and with the participation and oversight of Co-Lead Class Counsel. If Defendants' written or computer records conflict with information submitted by a claimant, counsel for both Parties shall in good faith attempt to resolve the conflict as they have done throughout the pendency of this matter.

### E. *Administrative Procedures to Avoid a Repeat of the Subject of this Litigation*

The Court commented at the hearing that it would be important for any proposed settlement to include injunctive relief, so that the Parties have a set plan if such an extraordinary event as a global pandemic were ever to occur again in the future that would prevent the company from operating. Accordingly, Defendants have now agreed to institute specific policies for the benefit of the Settlement Class and crew members. *Id.* ¶ 4.5. If a situation arises where the vessels are unable to sail with passengers (and therefore the crew would not be fulfilling the duties for which the shipowner bargained in the crew employment contracts), the shipowners may send a memorandum to the entire crew advising them of the facts concerning why the vessel cannot operate and requesting them to elect three crew representatives in good standing to discuss a resolution. The shipowner would also pick two crew representatives in good standing. At Defendants' expense, these five crew members and the shipowners would retain a neutral federal court approved mediator who would mediate between the crew and management to negotiate a resolution of any wage issue, repatriation, or anything else that arises as a consequence of pandemic or other disaster that might prevent the ship from sailing. Once a resolution is reached and in writing, the mediator would go over the terms with the entire crew at a general meeting and a vote would be taken. If a resolution cannot be reached within eight (8) hours, the parties shall follow the current crew contracts in effect. Those who want to opt out, can be repatriated. If repatriation is not feasible (for example, in the case of ship quarantine or other government order) then the mediated agreement would have to address that specific scenario or the crew who would be repatriated when feasible to do so. Those who opt in, would then sign the new mediated agreement to temporarily replace their crew contracts. The mediated agreement contracts would revert back to the regular crew contract when the ship is able sail with passengers again.

### F. *Class Counsel's Fees and Expenses and Named Plaintiff's Case Contribution Award*

The Parties stipulate in the Settlement Agreement that The Moskowitz Law Firm PLLC and Lipcon, Margulies, Alsina & Winkelman, P.A. will serve as Class Counsel. *Id.* ¶ 2.7. Class Counsel's application for attorneys' fees and expenses for all of the various law firms involved shall not exceed 30% of just the monetary relief (not valuing the injunctive relief), or $262,500. *Id.* ¶ 17.1. Defendants will also pay the named Plaintiff a service award if approved by the Court not to exceed $5,000.00.[4] *Id.* ¶ 17.2. The Court may consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement. *Id.* ¶¶ 17.1, 17.2.

### G. *Final Approval and Objections*

Class members may object to the settlement no later than ninety (90) days after the Preliminary Approval Order. *Id.* ¶ 2.29. The Motion for Attorneys' Fees shall be filed within seventy-five (75) days after the Preliminary Approval Order *Id.* ¶ 17.1. and the Parties shall respond to any objections no later than ten (10) days prior to the Final Approval Hearing *Id.* ¶ 10.7.

## IV. THE COURT SHOULD ENTER AN ORDER GRANTING PRELIMINARY APPROVAL OF THE SETTLEMENT

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992). "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* In the second step, after notice to the class and time and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).

Under Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court *will likely be*

---

[4] *See* Section VI, *infra.*

*able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii) (emphasis added). *Id*.

The amended Rule 23(e)(2) requires courts to consider whether:

(a)    the class representatives and class counsel have adequately represented the class;

(b)    the proposal was negotiated at arm's length;

(c)    the relief provided for the class is adequate, taking into account:

      i.   the costs, risks, and delay of trial and appeal;

      ii.   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

      iii.   the terms of any proposed award of attorney's fees, including timing of payment; and

      iv.   any agreement required to be identified under Rule 23(e)(3); and

(d)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).

Further, the standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted). Applying this standard and the new standard of Rule 23, this settlement is an excellent one by any measure and should be preliminarily approved.

### A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the Settling Parties, and were negotiated at arm's length. The Parties participated in mediation sessions with Rodney Max, Esq., a well-respected mediator with significant experience resolving complex suits. Mr. Max and the Parties participated in mediation sessions in August 2020. (Max. Decl. ¶ 12). The very fact of Mr. Max's

involvement weighs in favor of preliminary approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of court-appointed special master to oversee mediation evidenced procedural fairness of negotiating process).

The Parties' extensive negotiations were also informed by considerable investigation, informal discovery by Class Counsel, and this Court's comments and concerns. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316–17 (S.D. Fla. 2005) (approving settlement over objection and concluding that class counsel had sufficient information to evaluate fairness of the settlement based on informal discovery).. Documents were informally produced and have been carefully reviewed by Class Counsel. In advance of and during the mediation, Defendants provided Plaintiff and Class Counsel with additional information concerning this Action, including Exhibit A.

**B. The Settlement Falls Squarely within the Range of Reasonableness**

As a result of this mediation process, the Settlement Agreement provides considerable monetary relief to the Settlement Class, and falls well within the range of possible approval. Under Rule 23(e)(2)(C), the relevant inquiry is whether the proposed settlement affords relief that "'falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation.'" *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 *10 (N.D. Ala. Aug. 1, 2019) (quoting *Lazy Oil Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) (citation and internal quotation marks omitted)); *Grant*, 2019 WL 367648, at *6; *accord Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) (Because "[t]he determination of whether a settlement is reasonable is not susceptible to mathematical equation yielding a particularized sum … [,] [t]he mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement."). As described above, this Settlement Agreement provides cash payments to affected crew members which represent almost 100% of their possible damages (if they are 100% successful at trial) and avoids costly individual arbitrations. The Settlement Agreement is unquestionably within the range.

**1. Monetary Relief**

The Settlement Agreement provides significant monetary benefits. All Settlement Class Members who make a claim are eligible for two types of payments. Wage Claim Type 1 claimants will receive payment of two (2) months crewmember wages at the rate of pay established by each

Settlement Class Member's contract of employment in effect as of March 18, 2020 with the amount of the payment based on the salary listed on the employment contract for each Approved Claim. Wage Claim Type 2 claimants will receive a minimum payment of $1,000.00 for each Approved Claim for any and all work performed on the Cruise Defendants' vessels during the Claims Period for each approved claim. *Id*. ¶ 4.4. This represents almost a complete recovery for Class Members. Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement providing recovery of 0.2% of sales). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12. Plaintiff and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' defenses, including potential dismissal of these claims in favor of arbitration. Each Class Member stands to recover a significant percentage of the amount they would be entitled to as a result of the Settlement. The Settlement Agreement's monetary recovery falls well within the range of reasonableness.

## C. The Settlement Saves Plaintiff and the Settlement Class from Considerable Litigation Hurdles

Any evaluation of the Settlement benefits must be tempered by the recognition that any compromise involves concessions by the Parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Civil Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted). Had litigation continued, Plaintiff and Settlement Class Members would have risked not prevailing on their claims, having to proceed in arbitration and/or risk the uncertainty of appeals. Additionally, the Settlement provides relief to the Settlement Class much more quickly.

### D.  Class Counsel Believes the Settlement Is Reasonable

Significant weight should be attributed to the belief of experienced counsel that the negotiated Settlement is in the best interest of the class. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The views of the parties to the settlement must … be considered."). Class Counsel are experienced and capable in the field of maritime claims for cruise ship passenger and crewmember injuries and lost wages owed to crewmembers, including class actions, and have successfully represented claimants in other litigation of this nearly exact nature. Further, Class Counsel has also been appointed Lead or Co-Lead Class Counsel in dozens of class actions representing plaintiffs against insurance companies, mortgage companies, cruise lines, consumer product sellers, and spearheaded the litigation and resolution of over 30 nationwide class actions for homeowners against the major mortgage providers in the country. Based on this experience, and decades more with class action lawsuits, it is Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

### E.  No Additional Agreements Required to Be Identified

There are no agreements required to be identified under Rule 23(e)(3).

## V.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

**A. The Settlement Class Meets the Four Requirements of Rule 23(a).**

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiff satisfies all four requirements of Rule 23 (a) as set forth below.

**1. The Settlement Class Is Sufficiently Numerous**

Rule 23(a)(1) requires Plaintiff to show that the proposed Class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 280 F.R.D. 665, 671–72 (S.D. Fla. 2012). The proposed class in this case well exceeds the minimum threshold.

**2. Questions of Law and Fact Are Common to All Settlement Class Members.**

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 275 F.R.D. at 673-74.

Plaintiff's claims here depend on the common claims for damages for breach of the virtually identical wage and severance clauses in Plaintiff's and Class Members' employment contracts. While some Class Members are also entitled to wages, that is a simple calculation that can be easily accomplished and constitutes a subclass *See Williams,* 280 F.R.D. at 672 (finding commonality where "all members of the proposed class were injured in the same manner, namely by being charged inflated premiums for the FPI"). Thus, while only one question of law *or* fact is required, common questions capable of class-wide resolution arise here regarding whether Defendants violated the severance and wage clauses in the contracts of crew members. These issues satisfy commonality.

**3. Plaintiff's Claims Are Typical of Those of the Settlement Class**

Rule 23(a)(3) requires Plaintiff to demonstrate that his claims are typical of those held by the proposed Class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with

commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 686 n.23 (S.D. Fla. 2004). Plaintiff's claims arise from the same two contract clauses as those brought on behalf of the proposed Class, i.e., Plaintiff and every Class Member were not paid severance pursuant to their contracts of employment. Although Plaintiff did not perform work on the *Grand Celebration*, Class Counsel have proposed a subclass for the few putative Class Members who worked, but were not compensated. Plaintiff and the Class seek redress through similar breaches of common severance and wage clauses in their contracts.

### 4.  Plaintiff and Their Counsel Are Adequate Representatives

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a.  Plaintiff Does Not Have Interests Antagonistic to Settlement Class Members

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members. *See Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997). Here, Plaintiff has no interests antagonistic to those held by the Settlement Class. The class definition includes only those who were subject to Defendants' conduct. (Ex. A ¶ 2.43). The critical and common issues in this case are the severance and wage clauses. Plaintiff has satisfied Rule 23(a)(4). *See Williams*, 280 F.R. D. at 673–74.

### b. Settlement Class Counsel Are Qualified and Experienced

As discussed above, the attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as Class Counsel, have been investigating these claims for months, and have served as lead and co-lead counsel in some of the largest class actions in the country in complex cases. The law firms that Plaintiff seeks to name as Class Counsel in this action, Lipcon, Margulies, Alsina & Winkleman, P.A. and The Moskowitz Law Firm, PLLC, have successfully prosecuted numerous maritime claims, insurance and consumer class actions, and are well

respected in the community that they serve. A copy of Class Counsels' Firm Resumes are attached hereto as **Composite Exhibit 6**.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3)

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Plaintiff here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659. Moreover, giving all Class Members the option to accept a comprehensive resolution of their claims in this action or opt out of it would be far superior to litigating each of their claims separately, especially since the actual damage amounts for each individual class member are low *Williams*, 280 F.R.D. at 675. Accordingly, the Court should certify the proposed Class.

### VI.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice and claim forms by first-class mail in the form attached as Exhibit 2 to the Settlement Agreement to all identifiable class members no more than thirty (30) days after the Court enters the Preliminary Approval Order. Ex. 4 ¶ 7.1. The Settlement Agreement also provides for an internet website through which Settlement Class Members can acquire information, and allows those Class Members that have to file claims to submit claims online. *Id.* ¶ 7.0.

### VII.   THE COURT SHOULD APPOINT THE UNDERSIGNED FIRMS AS CLASS COUNSEL

The Parties have defined Class Counsel to include the undersigned law firms. Ex. 4 ¶ 2.6. Plaintiff and the undersigned now move the Court to appoint these firms as Settlement Class Counsel. Undersigned counsel have significant experience litigating these cases, as well as other nationwide class actions.

## VIII.   THE COURT SHOULD PRELIMINARILY ENJOIN PARALLEL PROCEEDINGS

Finally, the Court should enter an order preliminarily enjoining all Settlement Class Members who do not execute and timely file a Request for Exclusion from the Settlement Class from filing, prosecuting, maintaining or continuing litigation in federal or state court based on or related to the claims or facts alleged in this action. This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All Writs Act.

The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act empowers the Court to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re Am. Online Spin-Off Accounts Litig.*, No. CV 03-6971-RSWL, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

All individual actions that may be brought by Settlement Class Members who do not opt out should therefore be enjoined pending the Court's determination whether to finally approve the proposed Settlement Agreement. Accordingly, pursuant to its authority under the All Writs Act, the Court should include in its order a preliminarily injunction against parallel proceedings pending the settlement approval process. *See, e.g., Shelby v. Two Jinns, Inc.*, No. 2:15-cv-03794-AB-GJS, 2017 WL 6347370, at *5 (C.D. Cal. Feb. 8, 2017) (entering an injunction against asserting released claims pending settlement approval and concluding that it is "necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. §1651(a)").

## IX.   NOTICE REGARDING INCENTIVE AWARD

Plaintiff hereby acknowledges that, after the original Stipulation of Settlement and Release was executed (ECF No. 17-1), a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions*, *LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). In *NPAS*, the Eleventh Circuit held that all service awards for class action

representatives are impermissible.[5]

Based upon this ruling, Plaintiff hereby represents and agrees that a service award cannot be approved for Plaintiff, unless the ruling in *NPAS* prohibiting service awards is reversed, vacated, or overruled. Should that not occur prior to Plaintiff's deadline specified in the Stipulation for requesting a service award, Plaintiff respectfully submits that this Court could still approve the Settlement Agreement and all of its terms, but also deny approval of specifically a service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS. See Metzler, et al. v. Medical Management International, Inc., et al.*, 2020 WL 5994537 (M.D. Fla. October 9, 2020) (reserving jurisdiction to award service awards if *NPAS* is reversed). Class Counsel could then "move for reconsideration upon such a reversal" up to and including the date the Second Gross Settlement Fund payment (as defined in the Settlement Agreement) is due to be paid.[6] *Id.*

## X. THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

Should the Court grant this Motion, Plaintiff will file his motion for final approval of the settlement on a date set by the Court. Plaintiff requests that the Court schedule the Final Approval Hearing no less than 110 days after entry of the order preliminarily approving the settlement.

## CONCLUSION

Plaintiffs respectfully request that the Court enter an order granting preliminary approval of the settlement.

---

[5] ***NPAS will not become binding precedent*** until issuance of the mandate (which has not yet occurred, nor has rehearing *en banc* yet occurred). *See Key Enters. of Del., Inc. v. Venice Hosp.,* 9 F.3d 893, 898 (11th Cir. 1993) ("[B]ecause the panel's mandate had not issued, the panel's decision was never the 'law of the case.'"); *see also* Fed R.App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final until issuance of the mandate[.]")). Appellees in *NPAS* have indicated their intention to seek rehearing *en banc*.

[6] Defendants have agreed to this procedure and **Exhibit 2** to the Settlement Agreement, the Class Notice at ¶18, discloses this procedure to all Settlement Class Members.

Respectfully submitted this 18th day of December, 2020.

By: **/s/ Adam M. Moskowitz**
Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: 305 740-1423

-and-

By:/s/ Michael Winkleman
Michael A. Winkleman
Florida Bar No. 36719
mwinkleman@lipcon.com
Daniel W. Grammes
Florida Bar No. 1010507
dgrammes@lipcon.com
Andrew S. Freedman
Florida Bar No. 091087
afreedman@lipcon.com
**Lipcon, Margulies, Alsina & Winkleman, P.A.**
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 18th day of December, 2020 and served by the same means on all counsel of record.

By: /s/ Adam Moskowitz