**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO: 20-23223-CIV-BLOOM**

DRAGAN JANICIJEVIC, on his own
behalf and on behalf of all other similarly
situated crew members working aboard
BAHAMAS PARADISE CRUISE LINE
vessels

      Plaintiff,

         v.

CLASSICA CRUISE OPERATOR, LTD.,
PARADISE CRUISE LINE OPERATOR
LTD. INC.,

      Defendants.

_____/

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS'
FEES AND EXPENSES, NOTICE REGARDING SERVICE AWARDS, AND
<u>INCORPORATED MEMORANDUM OF LAW</u>**

 

**The Moskowitz Law Firm, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: 305 740-1423
Adam Moskowitz
Howard Bushman
Joseph Kaye

and

**Lipcon, Margulies, Alsina & Winkleman, P.A.**
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204
Michael Winkleman
Daniel W. Grammes
Andrew S. Freedman
*Counsel for Plaintiffs*

## INTRODUCTION

Class Counsel are very proud to present for final approval a class action settlement (the "Settlement") that was already granted Preliminary Approval by this Court, on behalf of hundreds of seafarer-employees who were employed, worked and were physically present on the Cruise Defendants' vessels *Grand Classica* and *Grand Celebration* anytime between March 18, 2020 until August 20, 2020. The Settlement established a fund in the amount of $875,000.00 to provide cash payments to Settlement Class Members for contractual wages and for time worked without pay. As of this date, the Parties have received only six (6) opt-outs and no objections[1] to final approval. This response to the Settlement is overwhelmingly supportive.

The Settlement's benefits were the result of significant, rigorous arm's length negotiations by the Parties and their counsel, under the direction of a distinguished mediator, Rodney Max, and will provide each and every crew member approximately 100% of the damages that they could have received in a litigation which would have been fraught with potential risks, including potential stay or dismissal of this matter in favor of arbitration as the Defendants contend is required in this context. [ECF No. 35]. Notice of this Settlement was disseminated to all Class Members via direct mail, UPS,[2] and email to those Settlement Class Members whose e-mail or mail addresses the parties actually had and could reasonably locate. This Notice plan was approved by this Court. *See* Preliminary Approval Order at ¶ 9.

Undersigned counsel were well-positioned to evaluate and negotiate this Settlement because they have been investigating and litigating seafarer wage claims for many years. Specifically, Plaintiff's counsel investigated their claims and allegations prior to filing this matter, and through discovery after the parties engaged in early mediation. Despite that work, Plaintiff and Class Members faced significant hurdles in litigating their claims to successful adversarial resolution. As

---

[1] Pursuant to Paragraph 12 of the Order Granting Renewed Motion for Preliminary Approval of Class Action Settlement, Certifying Settlement Class for Settlement Purposes, Directing the Issuance of Class Notice, and Scheduling a Final Approval Hearing, dated January 7, 2021 [ECF No. 41] (hereinafter referred to as "Preliminary Approval Order"), the deadline for any objections is **"no later than April 12, 2021"** and **"Settlement Class Counsel shall be obliged to file all responses to objections with the Court on or before April 12, 2021."** *Id.* at ¶12. Accordingly, Class Counsel will file a response to any and all objections on or before April 12, 2021. Plaintiff does not waive any and all arguments regarding the validity or substance of any objections, by not addressing same in this Motion, because it would be premature.

[2] Due to the pandemic, Honduras was not accepting mail and, therefore, the parties agreed that all notices to 21 Honduran class members would be via UPS and email, which was timely completed.

such, and given the immediate and substantial cash benefits the Settlement will provide to the Class, there can be no question that the terms of the Settlement are "fair, reasonable, and adequate" and should be granted final approval.

This result is all the more extraordinary because it involved the resolution of contractual claims which would have been potentially subject to an arbitration agreement between the Defendants and the class. [ECF No. 35]. For this accomplishment, Class Counsel are asking for the Court to award them 30% of the monetary recovery (not including the significant injunctive relief) or up to $262,500.00 in fees and expenses, negotiated only *after* all Class Member's benefits had been secured. This fee percentage is of just the monetary recovery made available to Class Members, and is well within the parameters established by the Eleventh Circuit in *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991).

Class Counsel respectfully request that this Court grant final approval of the Settlement and approve the application for attorneys' fees and costs. Plaintiff further requests that this Court reserve jurisdiction as to the Representative Plaintiff's service award for reconsideration of just this award until *Johnson v. NPAS Solutions, LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), is fully resolved. *See* Section II.B., *infra*. A Proposed Order is attached as **Exhibit A**.

## FACTUAL BACKGROUND

On August 4, 2020, Plaintiff brought this Class Action lawsuit alleging that Defendants failed to abide by its contractual agreements with its crewmembers. Plaintiff claimed that, pursuant to Plaintiff's employment contract, Defendants are required to pay Plaintiff and the Class two months of wages and/or Basic Pay Severance upon Defendants terminating Plaintiff's employment contracts. When the COVID-19 pandemic halted all sailings, Plaintiff alleges that Defendants unilaterally terminated Plaintiff and the Class' employment contract and did not pay Plaintiff and the class the appropriate amount of severance, as well as certain amounts for work performed while still on the ship until the crew could be repatriated. After Plaintiff filed the original complaint, and based on Plaintiff's counsel's previous experience in successfully litigating claims against cruise operators, the Parties agreed in August 2020 to commence an early mediation. The Parties retained Rodney Max and began a series of telephonic mediation sessions, including an all-day, nine-hour Zoom mediation session on August 18, 2020. The Parties could not reach a resolution at the August 18th session, but further discussions continued and resulted in the class action Settlement.

Plaintiff originally brought multiple claims regarding repatriation and false imprisonment issues, as well as expanded claims for lack of payment. The Defendants contested the factual and legal predicate for the Plaintiff's claims and the amount of class members at issue. Further, Defendants asserted that arbitration would be applicable and that a class would not be susceptible to certification. *See* [ECF No. 35]. Further, through the mediation process, Defendants provided evidence of Defendants' actions that contradicted some of Plaintiff's claims regarding repatriation and false imprisonment, as well as the expanded non-payment of wages issues. Additionally, the discovery showed that less class members were affected than originally alleged. Defendants formalized its evidence in a declaration. *See* [ECF No. 37-1].

Specifically, the Defendants' affiant maintained that Defendants went to extraordinary lengths to repatriate crew members, but were constrained by Centers for Disease Control ("CDC") restrictions, immigration restrictions, and general safety issues. *See id.* at ¶ 22 ("Countries were closing borders, airports were closing, flights were canceled, and the way in which crew were to be repatriated was suddenly and severely impacted by the various countries where crew were able to disembark passenger cruise vessels.")

Further, not all Class Members were on the subject vessels for the entire class period. For example, the named Plaintiff signed off the ship on June 21, 2020. *Id*. at ¶ 44. Some Class Members were off the boat on other dates. *Id.* at 34. Finally, the number of Class Members amounted to 276 crew members who were not paid their contractual two-month severance payments, and some crew were not paid a portion of their wages for work performed on the vessels while in port without guests. *See* ECF No. 36 at ¶ 25.

Therefore, Plaintiff based his settlement demands upon the discovery reviewed to avoid protracted and expensive litigation for settlement purposes only. *Id.* The Parties fully resolved this matter, after days of discussions, and executed a Term Sheet on August 21, 2020. That same day, the Settling Parties announced their Settlement and filed a joint motion to stay the case while the Settling Parties formalized their Agreement. [ECF No. 12]. Pursuant to the joint request to stay, the Court administratively closed this case on August 24, 2020 "without prejudice to the parties to file a settlement agreement for the Court's consideration and/or appropriate dismissal documentation." [ECF No. 13]. The Parties subsequently finalized and executed the settlement agreement and moved for preliminary approval. [ECF No. 21].

At the hearing on preliminary approval, this Court had many questions regarding the specifics of the settlement, and the reasons for the agreement to resolve this matter for the amounts obtained. Accordingly, the Court denied the request for preliminary approval without prejudice [ECF No. 29] and requested further information regarding the following:

   a.   The settlement calculation as to the amount of the fund and how that compares to the potential damages;

   b.   a refinement of the settlement class definition (with conforming notices etc);

   c.   removal of the dual payment structure over time which would then make any lien on the vessel to insure payments unnecessary;

   d.   any injunctive changes the parties could agree on;

   e.   capping the notice expenses, and

   f.   and a better explanation on how payments will be made to the settlement class.

On November 30, 2020, Plaintiff filed a Third Amended Complaint detailing the allegations which corresponded to the discovery received to date. [ECF No. 34]. On December 11, 2020, Defendants filed an Answer to the Complaint [ECF No. 36] and a Motion to Compel Arbitration [ECF No. 35].

The Parties completed further protracted negotiations and provided the Court with a revised Settlement, [ECF No. 37-4], and a renewed motion for preliminary approval with specific information to further support the fairness of same. *See, e.g.,* [ECF No. 37, Exs. 1–6].

1.   **The Revised Settlement Terms and Agreement**

   A. *The Proposed Settlement Class*

   All seafarer-employees who were employed, worked and were physically present on the Cruise Defendants' vessels *Grand Classica* or *Grand Celebration* for at least one day anytime between March 18, 2020 until August 20, 2020. Seafarer-employees" shall not include deck and engine employees and independent contractors, Cruise Defendants' corporate officers or corporate directors.[3]

   B. *Monetary Relief*

   The Amended Settlement Agreement affords members of the Settlement Class significant monetary relief. [ECF No. 37-4 at ¶ 2.45]. A settlement fund in the amount of $875,000.00 will be created to provide cash payments to Settlement Class Members for contractual wages and for time

_____

[3] No deck and engine crew members went unpaid.

worked without pay. The Settlement Fund will first be used to pay any attorneys' fee and expense award to Co-Lead Class Counsel, any incentive award to the Class Representative that is approved by this Court in accordance with the terms of the Settlement Agreement, and any and all administrative costs (the result is the "Net Settlement Fund"). The Net Settlement Fund will be divided and distributed as individual allocations to the Settlement Class Members who do not opt out. If the Claims Received exceed the Net Settlement Fund, each Settlement Class Member shall have their amounts reduced pr*o rata.* Any remaining Net Settlement Funds that remain after final approval and distribution to valid and approved class members shall revert to Defendants.

Confirmatory discovery has shown that this relief is close to 100% of the potential Class Member damages that could have been obtained at trial. Specifically, the common fund is broken down into two components: 1) Class Member payments and 2) attorneys' fees and costs, as well as the Class Representative award. There are two types of damages that will be recoverable under the proposed Settlement to the Class to share in the **$612,500 Class Member payment portion**:[4]

▪ **(1st Category/Subclass)**: Each of the 276 Class Members are required to be paid 2-months' severance pursuant to their contracts unless their contract was due to expire within thirty (30) days of termination. The employment contracts contain an identical severance clause (even if and when the crew member was immediately sent home) and the average 2-month severance is $1,858.00 (*for a total of **$512,808.00***), and

▪ **(2nd Category/Subclass)**: Discovery confirmed that there were only approximately 14% of crew members (or 40) that continued to perform some "services" or "work" (such as a cook, etc.) during the class period, for which they were not paid. Since the claims are still being processed, class counsel will provide an update once the claims process closes.

The discovery to date revealed that the average two months' severance for each class member is $1,858.00, which multiplied by the 276-crew-member putative class equals a maximum of $512,808.00. Additionally, there is a minimum of $1,000.00 per class member for any and all work performed on Defendants' vessels during the claims period. [ECF No. 37-4 at ¶ 4.3, "Wage Claim Type 2."]. The confirmatory discovery revealed 14% (or 40 crew members) of the class members worked sporadically on a ship without passengers and they should apply for Wage Claim Type 2.

---

[4] As outlined below, Class Counsel is seeking approval from the Court for 30% in attorneys' fees and costs, which totals $262,500.

### C. *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, members of the Settlement Class will release the Defendants, as well as all other entities included in the definition of "Released Parties" set forth in the Settlement Agreement [ECF No. 37-4 at ¶¶ 2.36 and 15], from:

> [A]ny and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages, actual, statutory, punitive, exemplary or multiplied damages, expenses, costs, attorney's fees and/or obligations, whether in law or equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on 46 USC § 10313, 46 USC § 10504, 18 USC § 1595, federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, promises, oral agreements and representations, omissions or failures to act regarding any and all alleged unpaid wages, severance, or any other monies arising out of or in connection with the employer-employee relationship with the Cruise Defendants, including all past, present and future claims that were brought or could have been brought in the Action concerning any of the claims raised therein.

[ECF No. 37-4 at ¶ 2.35].

### D. *Class Notice*

Class notice was disseminated directly to Class Members via direct mail, UPS (for all Honduran nationals), or email at the addresses provided by Defendants' employment records at their last-known mailing address in the forms approved by the Court. *Id.* ¶¶ 2.27 and 7; *see also* MacIvor Decl., attached as **Exhibit B**, ¶¶ 8–14. The notice was sent within thirty (30) days of the entry of the Preliminary Approval Order on February 5, 2021. MacIvor Decl. ¶ 9. The Settlement Administrator also established a website on which Settlement Class members were able to review the Settlement Agreement and its exhibits, and for those Class Members who filed claims, they had the ability to file a Claim Form online. *Id.* ¶ 15. Settlement Class Members were also able to opt out or object by following the prescribed process. *Id.* ¶¶ 17–18.

Due to the fact that there are approximately 276 crew members in the Settlement Class, the Defendants, and the law firm of Foreman Friedman, P.A., primarily administrated the settlement in

good faith, with the participation and oversight of Co-Lead Class Counsel. Counsel for both Parties communicated well and were able to resolve all issues that arose in good faith.

### E. *Injunctive Relief*

Defendants have agreed to institute business practice changes for the benefit of the Settlement Class and crew members. *Id.* ¶ 4.5. If a situation arises where the vessels are unable to sail with passengers (and therefore the crew would not be fulfilling the duties for which the shipowner bargained in the contracts with crew), the shipowners may send a memorandum to the entire crew advising them of the facts and asking them to elect three crew representatives in good standing to discuss a resolution. The shipowner would also pick two crew representatives. These five crew members, at the Defendants' expense, would then retain a neutral federal court approved mediator who would mediate between the crew and management to negotiate a resolution. Once a resolution is reached and in writing, the mediator would go over the terms with the entire crew at a general meeting and a vote would be taken. If a resolution cannot be reached, the parties shall follow the current crew contracts in effect. Those who want to opt out, can be repatriated. If repatriation is not feasible (for example, in the case of ship quarantine or government order) then the mediated agreement would have to address that scenario. Those who opt in, would then sign the new mediated agreement to temporary replace their crew contracts. The mediated agreement contracts would revert back to the regular crew contract when the ship can sail with passengers again.

### F. *Class Counsel's Fees and Expenses and Named Plaintiff's Case Contribution Award*

The Parties stipulate in the Agreement that The Moskowitz Law Firm PLLC and Lipcon, Margulies, Alsina & Winkelman, P.A. will serve as Class Counsel. *Id.* ¶ 2.7. Class Counsel's application for attorneys' fees and expenses for all of the various law firms involved shall not exceed 30% of the Settlement Fund, plus expenses. *Id.* ¶ 17.1. Defendants will also pay the named Plaintiff a service award if approved by the Court not to exceed $5,000.00.[5] *Id.* ¶ 17.2. The Court may consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement. *Id*. ¶¶ 17.1, 17.2.

---

[5] *See* Section VI, *infra.*

### G.     Final Approval and Objections

Class members may object to the settlement up to April 12, 2021, which complies with the Preliminary Approval Order. *Id.* ¶ 2.29.The Parties shall respond to any objections no later than 10 days prior to the Final Approval Hearing. *Id.* ¶ 10.7.

### 2.     Preliminary Approval and Settlement Administration

On January 7, 2021, this Court preliminarily approved the settlement. [ECF No. 41]. After the Court preliminarily approved the Settlement and certified the proposed Settlement Class, it ordered the parties to implement the Notice plan. *Id.* at ¶ 9. The Settlement Administrator, Foreman Friedman, P.A., disseminated the notice as required by the Preliminary Approval Order and in the form of the notice approved by the Court. MacIvor Decl. ¶¶ 9–14. The manner of notice included direct mail (along with a Claim form). *Id.* ¶¶ 9–12. The parties further emailed the notice to currently available email addresses that are in the possession of the parties. *Id.* ¶ 13. Foreman Friedman, P.A. obtained Settlement Class Member records from Defendants, including the last-known mailing addresses for all persons meeting the Settlement Class definition. *Id.* ¶ 8. Foreman Friedman mailed, sent notices via UPS to all Honduran nationals, or emailed notice to a total of 276 class members. *Id.* ¶¶ 9–13.  Foreman Friedman, P.A. also activated the Settlement website. *Id.* at ¶ 15. Class Counsel established a toll-free telephone line that is accessible 24 hours a day, seven days a week for Class Members who seek additional information. *Id.* ¶ 16.

The deadline for opt-outs or objections is April 12, 2021. *Id.* ¶¶ 17–18. As of the date of this filing, Foreman Friedman, P.A., has received only 6 valid opt-out requests, representing only 2.2% of the Settlement Class, and counsel has received 0 objections. *Id.* ¶¶ 17–18.

## LEGAL ARGUMENT

## I.     THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

Courts in this circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved; (4) the likelihood of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *See Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 691-94 (S.D. Fla. 2014). "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)). Analysis of these factors compels the conclusion that this Court should approve the Settlement.

### A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

The first factor for final approval requires this Court to consider whether the Settlement was obtained by fraud or collusion among the parties and their counsel. Courts begin with a presumption of good faith in the negotiating process. *See Saccoccio,* 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion")*; Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement"). The Settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in an intensive mediation with Rodney Max, a well-respected mediator with significant experience resolving complex cases. Mr. Max conducted multiple mediation sessions in August 2020.[6]

The parties, through regular telephonic sessions and email communications, and with the assistance of Mediator Max, negotiated first the terms of an initial memorandum of understanding and then a final Settlement Agreement. *Id*. Mr. Max has significant experience mediating complex commercial suits to resolution, and was involved in every step of the process. *Id*. ¶ 37. The very fact of his involvement weighs in favor of approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 612, 619-20 (E.D.

---

[6] *See* Joint Declaration of Adam Moskowitz and Michael A. Winkleman in Support of Plaintiff's Motion for Final Approval of Class Action Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, Notice Regarding Service Award and Incorporated Memorandum of Law at ¶ 9. ("Joint Decl.") (attached as **Exhibit C**).

La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion). The parties' negotiations were also informed by considerable discovery obtained by Class Counsel in litigating these claims.

**B.  The Issues Presented Were Highly Complex and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.**

This case involves complex legal claims and defenses brought on behalf of hundreds of Settlement Class Members, and includes claims subject to complex regulations (admiralty and international laws), and potential arbitration agreements. *See* [ECF No. 35.] Litigating these claims would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. Even if Plaintiff was ultimately to have prevailed in this litigation (which Defendants contest), that success would likely have borne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides. (Joint Decl. ¶¶ 38–45); s*ee, e.g., In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd*, 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

By contrast, the Settlement provides immediate and substantial monetary relief to the Settlement Class, with payments approximating 100% of Settlement Class Members' actual damages. (Joint Decl. ¶¶ 24–26.) This recovery is extremely favorable and constitutes an excellent result. *See, e.g., Beber et al. v. Branch Banking & Trust Co. et al.*, No. 15-cv-23294 (S.D. Fla.) (ECF No. 109) (approving similar settlement with payment percentages of 10%, 8%, and 5%); *Saccoccio,* 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief "very likely exceeds what Plaintiffs could have won at trial"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (range of 9% to 45% of damages was an "exemplary" result). These benefits come without the expense, uncertainty, and delay of litigation. In light of the costs, uncertainties, and delays of litigating through trial—possibly an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

**C. Class Counsel Was Well Positioned to Make a Reasoned Judgment Regarding the Settlement.**

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to settlement, Class Counsel have been investigating and litigating seafarer wage claims for many years. (Joint Decl. ¶ 33.) It was this knowledge that led the parties to enter into a settlement discussion. Further, before, during, and after mediation, Class Counsel received discovery regarding the claims at issues, potential damages, and the merits of Plaintiff's claims to ensure that the Settlement was fair and complete, and to confirm the value of the relief provided to the Class. (*Id.* ¶¶ 34–35.)

**D. Plaintiff Faced Significant Obstacles to Obtaining Relief.**

"[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise"). Class Counsel and Plaintiff believe they have a compelling case, but also recognize that Defendants would have raised significant defenses to all claims. *See e.g.* [ECF No. 35]. Although Plaintiff and Class Counsel maintain that these defenses lack merit, had litigation continued, Plaintiff and Settlement Class Members would have risked not prevailing on their claims. (Joint Decl. ¶¶ 40–42.) Had the parties continued to litigate, Plaintiff could have stood to recover nothing on behalf of the Class.

**E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.**

As explained above, the Settlement offers over $875,000 in cash payments to the Settlement Class, as well as prospective relief and attorneys' fees. This will make available 100% of the claimants' actual potential damages, which exceeds the standards established by this and other courts. (Joint Decl. ¶¶ 24–26); *see, e.g., Behrens v. Wometco Enter. Inc.*, 118 F.R.D. 534, 542 (S.D.

Fla. 1988) ("the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate . . . A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of settlement is . . . a yielding of absolutes and an abandoning of highest hopes").

Similarly, in *LiPuma v. American Express Co.,* 406 F. Supp. 2d 1298 (S.D. Fla. 2005), this Court found that a settlement that recovered 8.1% of the possible damages was fair, adequate, and reasonable. When valuing the total recovery, this Court included the cash fund, the proposed value of the prospective relief, and the costs of notice and administration. *Id*. at 1322. This Court focused on "the possible recovery at trial" and evaluated the settlement in its "totality" and not on a "claim-by-claim" or "dollar-by-dollar" basis. *Id*. Further, the presence of "strong defenses to the claims" makes lower recoveries more reasonable, *id*; *see also Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1346 ("standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."),[7] and "when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) (citation and quotations omitted).

Here, the Settlement Agreement provides that all Settlement Class Members are eligible to receive a cash payment of 100% of their contractual two-month severance payments, as well as a portion of their wages for work performed on the vessels while in port without guests. [ECF No. 37-4 at ¶ 4] Moreover, all Settlement Class Members who submit a valid claim form will recover a cash payment. This supports a finding of reasonableness here.

The fact that the parties agreed to a "claims-made" settlement does not render its terms unreasonable and, in some cases, it is a better result. *See, e.g., Saccoccio*, 297 F.R.D. at 696 (overruling objections to claims-made process because "[t]here is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment.").[8] The Settlement will

---

[7] *See also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (holding a 5.6% recovery was fair and adequate in view of the risks of further litigation and litigation objectives).

[8] *See also Casey v. Citibank*, No. 12-cv-820 (N.D.N.Y.) (ECF No. 222 at ¶ 6) (approving virtually identical claims-made settlement and finding that regardless of the take rate, "[t]he settlement confers substantial benefits upon the Settlement Class members, is in the public interest, and will

also provide valuable prospective relief to the Settlement Class to ensure that these issues do not arise in the future. *See* Section 1.E., *supra*; Joint Decl. ¶¶ 27, 52–53. These results are clearly reasonable.

**F.   The Opinions of Class Counsel, the Class Representative, and Absent Class Members Strongly Favor Settlement Approval.**

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiff will adequately represent the Class in this action, and its conclusion was warranted. *See* Preliminary Approval Order.

Class Counsel has litigated seafarer wages actions and national class actions for many years, have reviewed significant discovery from the Defendants, and fully support the Settlement. Based on this specific experience, it is Class Counsel's informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. (Joint Decl. ¶¶ 4, 33.)

As of March 23, 2021, of the 276 Settlement Class members, the administrator has received only 6 valid opt out requests and Class Counsel received no objections. *See* MacIvor Decl. ¶¶ 17–18. This overwhelming support is evidence of the Settlement's fairness. *See, e.g., Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement."); *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices). Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

---

provide the parties with repose from litigation."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (discussing claims-made settlement and affirming contingency fee award based on total possible recovery); *Shames v. Hertz Corp.*, 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) (approving claims-made settlement over objections because "there is nothing inherently objectionable with a claims-submission process, as class action settlements often include this process, and courts routinely approve claims-made settlements") (citations omitted); *Lemus v. H & R Block Enters. LLC,* No. 09-cv-3179, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) (approving claims-made settlement where unclaimed funds reverted to the defendants); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *5 (M.D. Fla. Dec. 29, 2011) (approving claims-made settlement with full reversion).

## II.     THE COURT SHOULD AWARD REASONABLE FEES AND COSTS AND RESERVE JURISDICTION ON THE REQUESTED SERVICE AWARDS.

For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, and the litigation of this action, Class Counsel seek 30% of the settlement fund made available to the Settlement Class or the amount of two-hundred sixty-two thousand five hundred dollars ($262,500.00) in attorneys' fees and expenses, excluding the valuable and important prospective relief.

### A.     The Court Should Award the Requested Attorney's Fees and Expenses.

Class Counsel is entitled to attorneys' fees for the benefit obtained in the Settlement. *See Saccoccio*, 297 F.R.D. at 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *Casey*, No. 12-cv-00820 (N.D.N.Y.) (ECF No. 223); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 676 (1980); *David v. Am. Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower. *See Poertner*, 618 Fed. App'x at 630; *Saccoccio*, 297 F.R.D. at 695; *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999); *see also Lee v. Ocwen Loan Servicing, LLC*, 2015 WL 5449813, at *18 (S.D. Fla. Sept. 14, 2015) (Goodman, M.J.) ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims."); *Casey*, No. 12-cv-00820 (N.D.N.Y.) (ECF No. 221) (the amount of claims made is "irrelevant to the underlying issue; to wit, whether the proposed settlement agreement is fair, reasonable, and adequate").

Federal district courts across the country have, in the class action settlement context, awarded class counsel fees in excess of 30% of the settlement fund. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (emphasis added; awarding fees of 31½% of settlement fund). Here, the requested percentage falls within the range provided by the Eleventh Circuit. *See Camden I,* 946 F. 2d at 774 (20%–50% of the value provided); *David*, 2010 WL

14

1628362 at *8 n.15 (20%-50% of common fund is "the customary fee in class actions that result in substantial benefits").

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* support the full award requested.

1. **The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 30% Award.**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel approximately 30% of the value of the cash benefits obtained. Class Counsel received no compensation during the course of this litigation and incurred expenses on behalf of the Class, which they risked losing had Defendants prevailed. (Joint Decl. ¶¶ 82–87.) From the time Class Counsel filed suit, there was a real possibility Class Counsel would receive no compensation, whatsoever.

2. **The Fee Request Reflects the Market Rate in Complex, Contingent, Litigation.**

A fee of approximately 30% of the cash value is within the market for class actions. *See Saccoccio*, 297 F.R.D. at 695 ("20-30% fee that is customary in common fund cases."). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract directly with their clients for contingent fees between 25% and 33%. These percentages are the prevailing market rates throughout the United States for contingent representation. *See id.* at 1341 (citing, *inter alia, Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination

of what constitutes a fair fee, this Court should be guided by such awards.[9] A fee of approximately 30% of the total monetary benefits is within the range of the customary fee awarded in common fund cases. *See, e.g., Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. at 1210.

### 3. The Novelty and Difficulty of the Questions at Issue

As previously mentioned, this case presents novel questions of law and issues of fact. Class action matters are generally complex. Defendants' defenses regarding compliance with contracts, arbitration, the different laws at issue, and the formulation of a damages methodology would have led to significant briefing on a motion to dismiss, motions for summary judgment, class certification, trial, post-trial, and on appeal. (Joint Decl. at ¶¶ 76–81). Thus, even though Class Counsel successfully reached a settlement with Defendants, the difficulty and associated risk of mastering and litigating these issues amply supports the full award requested. *Id*.

### 4. The Skill, Experience, and Reputation of Class Counsel

This litigation required a high degree of skill and experience. Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before this court. *See* Firm Resumes at [ECF No. 37-6]. Class Counsel have many years of experience successfully litigating maritime matters and nationally recognized class actions. Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by Defendants detailed above. The quality of Class Counsel and their achievement in this case is equally shown by the strength of their opponents. Defendants' counsel, Foreman Friedman, P.A, is an excellent defense firm. (Joint Decl. at ¶ 75). This factor thus also favors awarding the requested fee.

### 5. The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award and here, it is significant and perhaps best establishes the propriety of the requested fee award. *See Hensley v.*

---

[9] *See also, e.g., Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters,* 190 F.3d 1291 (affirming 33-1/3%).

*Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and prospective relief. *See Poertner*, 618 Fed. App'x at 629; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *LiPuma,* 406 F. Supp. 2d at 1323. The results here, of more than $875,000 in cash and the prospective relief, are excellent. Defendants are required to change their business practices to ensure the issues which gave rise to this action do not repeat. These results are powerful evidence supporting the fee award.

### 6. The Time and Labor of Class Counsel

Investigating, prosecuting, and settling the claims here demanded time and labor. (Joint Decl. ¶¶ 67–72). The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent many hours investigating the claims of many potential plaintiffs against Defendants in this action. *Id*. Plaintiff's counsel investigated their claims and allegations through discovery, including the review of documents. This work required a significant amount of resources.

Class Counsel's experience, and the knowledge, gained therein, allowed Class Counsel to work more efficiently, and achieve this excellent result swiftly which effectively limiting the wasting resources of all parties and this court. This supports the fee requested.

### 7. The Reaction of the Class to the Settlement.

To date, the parties have received no objections and only 6 valid opt-out requests, which supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343; MacIvor Decl. ¶¶ 17–18.

### B. Notice Regarding Service Award.

Plaintiff and Class Counsel hereby acknowledge that, after the original Settlement Agreement and Release was executed and this Court's entry of the Preliminary Approval Order, a panel of the United States Court of Appeals for the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions*, *LLC*, 2020 WL 5553312 (11th Cir. Sept. 17, 2020), holding that service awards for class action representatives are impermissible.[10] Although the Settlement Agreement makes clear

---

[10] *NPAS* will not become binding precedent until issuance of the mandate (which has been stayed pending a petition for rehearing *en banc*, which has not yet been ruled on). *See, e.g., Nat. Res. Def. Council, Inc. v. County of Los Angeles*, 725 F.3d 1194, 1203–04 (9th Cir. 2013), *certiorari denied*,

that the settlement is in no way conditioned upon the granting of any service awards [ECF No. 37-4 ¶¶ 17.1, 17.2], Plaintiff and Class Counsel hereby submit that this Court should reserve jurisdiction regarding awarding a service award for Plaintiff, unless and until the ruling in *NPAS* prohibiting service awards is reversed *en banc*, vacated, or overruled on or before the Final Fairness Hearing. Class Counsel will advise this Court of the status of *NPAS* prior to the Final Fairness Hearing.

To the extent it is still binding on this Court at the time of final approval, the Parties respectfully submit that this Court still approve the Settlement and all of its terms, but not approve the service awards and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *NPAS. See Metzler, et al. v. Medical Mgmt. Int'l Inc., et al.*, 2020 WL 5994537 (M.D. Fla. Oct. 9, 2020) (reserving jurisdiction to award service awards if *NPAS* is reversed). Class Counsel could then "move for reconsideration upon such a reversal." *Id.*

However, should *NPAS* be reversed, vacated, or overruled, this Court should approve the service awards for the Representative Plaintiff. The Notice advised Settlement Class Members that the Plaintiff would apply for a service award not to exceed $5,000. In instituting this litigation, the Representative Plaintiff has acted as a private attorneys general seeking a remedy for what appeared to be a public wrong. *See Pinto,* 513 F. Supp. 2d at 1344. The Class Representative aided in the investigation of these claims and settlement. (Joint Decl. ¶¶ 58–64.) Private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public. *See Pinto,* 513 F. Supp. 2d at 1344. Approval of this award is warranted as a matter of policy and is appropriate under applicable precedents. *See Gevaerts v. TD Bank*, No. 2015 WL 6751061, at *9 (S.D. Fla. Nov. 5, 2015) (approving the requested service awards of $10,000); *Dorado v. Bank of Am., N.A.*, 2017 WL 5241042, at *7 (S.D. Fla. Mar. 24, 2017) (same); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *14 (C.D. Cal. Feb. 6, 2019) (awarding $10,000 service awards to both class representatives and named plaintiffs).

---

572 U.S. 1100 (2014) (explaining that "[n]o opinion of this circuit becomes final until the mandate issues"); *see also* Fed R.App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not final until issuance of the mandate[.]")); *Key Enters. of Del., Inc. v. Venice Hosp.,* 9 F.3d 893, 898 (11th Cir. 1993) ("[B]ecause the panel's mandate had not issued, the panel's decision was never the 'law of the case.'").

## **CONCLUSION**

Plaintiff and Class Counsel respectfully request that the Court grant final approval of the Settlement, as well as the application for Class Counsel's fees and expenses. Further, Plaintiff and Class Counsel request that the Court grant the request for a service award should *NPAS* be reversed, vacated, or overruled by the time this Court enters its final order approving the settlement, or alternatively deny the request and reserve jurisdiction for Plaintiff and Class Counsel to move for reconsideration if *NPAS* is thereafter reversed, vacated, or overruled.

Respectfully submitted this 23rd day of March, 2021.

**By: /s/ Adam M. Moskowitz**
Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: 305 740-1423

-and-

By:/s/ Michael Winkleman
Michael A. Winkleman
Florida Bar No. 36719
mwinkleman@lipcon.com
Daniel W. Grammes
Florida Bar No. 1010507
dgrammes@lipcon.com
Andrew S. Freedman
Florida Bar No. 091087
afreedman@lipcon.com
**Lipcon, Margulies, Alsina & Winkleman, P.A.**
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 23rd day of March, 2021 and served by the same means on all counsel of record.

By:  /s/ Adam Moskowitz