UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-23223-BLOOM/Louis**

DRAGAN JANICIJEVIC, on his own
behalf and on behalf of all other
similarly situated crew members
working aboard BAHAMAS
PARADISE CRUISE LINE vessels,

      Plaintiff,

v.

CLASSICA CRUISE OPERATOR,
LTD. and PARADISE CRUISE LINE
OPERATOR LTD.,

      Defendants.

_____/

**ORDER GRANTING FINAL APPROVAL TO CLASS ACTION
SETTLEMENT AND ENTERING FINAL JUDGMENT**

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Final Approval of Class

Action Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, and Notice

Regarding Service Awards. ECF No. [44] ("Motion"). The Court has carefully reviewed the

Motion, all supporting submissions, the arguments presented at the Final Approval Hearing, the

record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth

below, the Motion is granted.

## I.   BACKGROUND

Plaintiff initiated this action on August 4, 2020. ECF No. [1]. On November 30, 2020,

Plaintiff filed his Third Amended Complaint, ECF No. [34], which is the operative pleading in this

case. The claims of Settling Plaintiff Dragan Janicijevic, on behalf of himself and all Settlement

Class Members, and Defendants Classica Cruise Operator Ltd. and Paradise Cruise Line Operator

Ltd. (collectively, "Defendants"), have been settled pursuant to the Amended Stipulation and Settlement Agreement dated December 18, 2020 (the "Settlement Agreement"). *See* ECF No. [37-4]. On January 7, 2021, the Court granted preliminary approval of the proposed class action settlement set forth in the Settlement Agreement and provisionally certified the Settlement Class for settlement purposes only. ECF No. [41].

On May 12, 2021, the Court held a duly noticed Final Approval Hearing to consider: (1) whether the terms and conditions of the Settlement Agreement are fair, reasonable and adequate; (2) whether Judgment should be entered dismissing the Settling Plaintiff's claims on the merits and with prejudice, including the claims of Settlement Class Members; and (3) whether and in what amount to award Attorneys' Fees and Expenses to Class Counsel and a Case Contribution Award to the Settling Plaintiff. *See* ECF No. [50].

The Settlement provides the Class with both monetary relief and important internal changes resulting in policies directed to avoid a reoccurrence of the wage dispute before the Court. The approved procedures that were incorporated into the class action settlement include procedures and protocols so that if a similar incident such as the Pandemic ever occurs in the future that results in an immediate stop sail order or other circumstance resulting in an immediate and unexpected cessation of the provision of goods and services by the cruise line, there is a mechanism by which shipowners, management and crew can either totally avoid a wage dispute or effectively communicate in an attempt to resolve any wage issue that may arise if the cruise line is prevented from being able to sail or service passengers in the future. The Parties have agreed on a general uniform procedure to address the wage issues with the direct involvement of crew members, which the Court has been advised will be implemented in all crew contracts when the cruise lines commences sailing again. The Court commends Defendants for voluntarily undertaking policy

changes. The Court finds that these policies certainly have an important value to the class that would not have been brought about by individual actions.

The Settlement provides for a Common Fund of  $875,000.00 (the "Fund") to be established for the benefit of the Class. Defendants represent that the Fund will be available to be paid to Class Members thirty-five (35) days after the Court grants Final Approval, assuming no appeals are filed. If an appeal is filed, payment will be made thirty-five (35) days after resolution of the appeal. If no appeal is timely filed, payment will be made within thirty-five (35) days from the order of final approval and entry of final judgment in this case.

The fund amount allowed all class members to submit timely claims for both: (1) any and all loss of alleged two month severance payments, and (2) any wages and tips not paid for work performed by certain crew on the vessel during the class period (because not all crew were asked to perform tasks). Under the proposed Settlement, all approved class members will receive 100% of their lost severance payments, and will be paid for wages and tips (even though no tips were paid by passengers during the pandemic when the cruise line was prohibited from sailing by the Centers for Disease Control) for all time spent performing tasks on the vessel during the pandemic. The Court finds this result to be outstanding, especially considering: (1) each class member had a contract that contains a specific Arbitration Clause, which this Court has previously enforced, (2) the settlement was able to be reached by all counsel—during a pandemic—and only after numerous mediation sessions with nationally-renowned mediator Rodney Max, and (3) the Court addressed concerns initially at a hearing with the Parties, which resulted in the filing of a Third Amended Complaint that addressed the Court's concerns.

## II.  DISCUSSION

As noted above, on May 12, 2021, the Court held a Final Approval Hearing on the Motion.

During that hearing, the Court set forth its detailed rulings with regard to each of the relevant considerations raised in the Motion. These findings are set forth again in detail below.

### A.  Jurisdiction

As set forth on the record at the Final Approval Hearing, the Court finds that it has personal jurisdiction over the Parties and the Settlement Class Members, and that it has subject-matter jurisdiction over this action and the Released Claims pursuant to 28 U.S.C. § 1332(d)(2) such that it has the authority to approve the Settlement Agreement. *See* ECF No. [34] ¶¶ 1-13; *see also David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *2 (S.D. Fla. Apr. 15, 2010) (concluding that the Court has "jurisdiction over the Settlement Class because its members were provided with proper notice of the proposed Settlement, its consequences, their right to be excluded, and their right to be heard." (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.")).

### B.  Notice

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Parties' notice procedures met this standard. The Settlement Agreement provided that the Settlement Administrator would distribute class notice and claim forms by first-class mail in the form attached as Exhibit 2 to the Settlement

Agreement to all identifiable class members no more than thirty (30) days after the Court entered the Preliminary Approval Order. ECF No. [37-4] ¶ 7.1. The Settlement Agreement further provided for an internet website through which Settlement Class Members could acquire information, and allowed those Class Members with claims to submit those claims online. *Id.* ¶ 7.0.

Pursuant to the notice procedures set forth in the Settlement Agreement, Defendants mailed an informational document and Claim Form ("Notice Pakcet") to the 276 Class Members. *See generally* ECF No. [45]. Most of these Notice Packets were mailed via United States Postal Service. However, Notice Packets sent to Honduras needed to be mailed via express mail carrier UPS because postal delivery was unavailable in Honduras due to the pandemic. Defendants also established a class action website, www.celebrationsettlement.com, dedicated to this matter, and Defendants set up a phone number for Settlement Class Member calls and a Post Office Box to receive mailed claims. *See generally id.* Upon review, the Court finds that adequate Class Notice was given to the Noticed Class Members in compliance with the Settlement Agreement and this Court's Preliminary Approval Order.

## C. Exclusions

Persons who wished to be excluded from the Settlement Class were provided with an opportunity to request exclusion as described in the Mail Notice and on the Settlement Website. As of May 2, 2021, 180 claims were received, 177 of which were approved. *See* ECF No. [48-1] at 2. Moreover, eight claimants validly opted out by the April 12, 2021 deadline. *See* ECF No. [49-1] at 2. The Court finds that the individual interests of the eight persons who timely sought exclusion from the Settlement Class are preserved and that no person was precluded from being excluded from the Settlement Class if he or she so desired.

Additionally, the Court notes that no objections were received in connection with the

Settlement Agreement by the April 12, 2021 deadline. ECF No. [48-1] at 2.

### D. The Settlement is Fair, Reasonable, and Adequate

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186-FtM-99DNF, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *ma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

"Before approving a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The Court's "judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Id.*

Courts in the Eleventh Circuit evaluate six factors in determining whether to approve a class action settlement: (1) the existence of fraud or collusion among the parties in reaching the settlement; (2) the complexity, expense, and duration of the litigation; (3) the stage of proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, the class representatives, and the substance and amount of opposition to the settlement. *Leverso v. S. Trust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *see also Bennett*, 737 F.2d at 986 (not listing absence of fraud or collusion as factor, but still requiring its evaluation, and including "the point on or below the range of possible recovery at which a

settlement is fair, adequate and reasonable"). "In considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson*, 484 F. App'x at 434 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330).

Taken together, a review of these considerations compels the conclusion that the Settlement Agreement in this case warrants final approval.

**1.   There is no evidence of fraud or collusion among the Parties.**

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JPMorgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citing *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002)). "There is a presumption of good faith in the negotiation process." *Id.*

This settlement was negotiated at arms length. The mediation was overseen by Rodney Max, a nationally renowned mediator. Mr. Max has significant experience mediating complex commercial suits to resolution and was involved in every step of the negotiation process, and this mediation process and subsequent negotiations spanned over the course of many weeks. The very fact of Mr. Max's involvement weighs in favor of approval. *See, e.g.*, *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) ("self-dealing contention" was "belied" by involvement of experienced mediator); *Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process). There is no suggestion of fraud or collusion here, either explicit or subtle.

**2.   This Settlement will avoid years of complex and expensive litigation.**

This case involves hundreds of Settlement Class Members who were employed by Defendants. The claims and potential defenses are complex, and litigating them to resolution would have been difficult and time consuming. Recovery by any means other than settlement would require years of litigation before this Court and appellate courts. By contrast, the Settlement Agreement provides immediate and substantial cash benefits to the Settlement Class. Moreover, the Settlement provides the class with relief that is close to 100% of the damages that the Class Members might have received by litigating this case through trial.

Litigating these claims to resolution would have proven difficult and consumed significant time, money, and judicial resources. Notably, the Parties indicate that Defendants likely would have succeeded in enforcing the arbitration clauses in the Class Members' employment agreements with Defendants. Even if Plaintiff and other Class Members had ultimately prevailed in litigation, however, that success would likely have only borne fruit for the Class after years of trial and appellate proceedings and the expenditure of substantial funds by both sides. "Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *see also Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd*, 2014 WL 103836 (5th Cir. Jan. 10, 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second . . . factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

This Settlement Agreement offers the Settlement Class extraordinary relief that "very likely exceeds what [they] could have won at trial." *Hall v. Bank of Am., N.A.*, No. 12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (quoting *Saccoccio*, 297 F.R.D. at 693). There was nothing to be gained from engaging in litigation of the claims presented and this factor also weighs in favor of approving the Settlement.

**3. The factual record is sufficiently developed to enable plaintiff and class counsel to make a reasoned judgment concerning the settlement.**

The stage of proceedings at which settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citation omitted). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see, e.g.*, *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007 FSH, Civ. 04-5126 FSH, 2005 WL 2230314, at *21 (D.N.J. Sept. 13, 2005) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements, especially in complex class action cases, should be done." (citation omitted)); *Lipuma*, 406 F. Supp. 2d at 1324 ("courts favor early settlement"). "Indeed, vast formal discovery need not be taken." *Saccoccio*, 297 F.R.D. at 694 (citation omitted).

Here, Class Counsel investigated their claims and allegations prior to filing this litigation and after filing through discovery, including the review of financial information, class members' employment contacts, correspondence between the class and the Defendants, and other relevant documents. Class Counsel's investigation and review of the information provided by Defendants

enabled them to gain an understanding of the evidence related to central questions in the case, and prepared them for well-informed settlement negotiations. Before settling, Class Counsel had already developed ample information and performed extensive analyses from which to assess the probability of success on the merits, the possible range of recovery, and the likely expense and duration of the litigation. Thus, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, and those of Class Members, as well as the appropriate bases upon which to settle them.

### 4. Plaintiff and Class Members would have faced significant risks had they proceeded with litigation.

"[T]he likelihood and extent of any recovery from the defendants absent . . . settlement" must also be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). Plaintiff might have recovered nothing for himself or for the other Class Members had he proceeded with this litigation. Indeed, Plaintiff would have needed to overcome Defendants' motion to compel arbitration, succeed on class certification, survive summary judgment, and prevail on a possibly lengthy trial and appeal. Moreover, Defendants' potentially case-dispositive defenses could have resulted in Plaintiff recovering nothing from this litigation. This factor therefore weighs strongly in favor of final approval, particularly given the significant relief made available to the Settlement Class. *See Hall*, 2014 WL 7184039, at *4 ("Indeed, there exists a potential that the class could endure a long and expensive trial only to come away with nothing. . . . In light of the recovery to the class, as well as the

significant litigation risk Plaintiffs faced absent settlement, the settlement is fair, reasonable and adequate.").

 5.   **The Settlement offers Class Members near-complete monetary relief as well as valuable injunctive relief.**

"The range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (citing *Lipuma*, 406 F. Supp. 2d at 1322). "In considering the question of possible recovery, the focus is on the possible recovery at trial." *Saccoccio*, 297 F.R.D. at 693 (citation omitted). "[T]he Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Id.* (citation omitted). Moreover, "when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011) (citation and quotations omitted).

Here, the Settlement Agreement provides that all Settlement Class Members are eligible to receive a cash payment of 100% of their contractual two-month severance payments, as well as a portion of their wages for work performed on the vessels while in port without guests, ECF No. [37-4] ¶ 4, which "very likely exceeds what Plaintiffs could have won at trial." *Saccoccio*, 297 F.R.D. at 693; *see also, e.g.*, *Braynen*, 2015 WL 6872519, at *7 ("This Settlement is generous to Class Members, providing relief approximating a trial win and, for many Class Members, exceeding a trial win."). In fact, all Settlement Class Members who submit a valid claim form will recover a cash payment. Furthermore, as noted above, it is highly uncertain whether Plaintiff's

case would have survived beyond the dismissal stage, as Defendants presented strong defenses and moved to compel arbitration pursuant to the arbitration clauses contained within the crewmember employee agreements. As such, the Court views the Settlement as an exceedingly fair compromise. *See, e.g.*, *Bennett*, 96 F.R.D. at 349-50 (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and the amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confer[red] . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting "very real potential that the Class could come away from a long expensive trial with nothing," and rejecting notion "that the Class should get more"). This alone supports a finding of reasonableness.

In addition, courts rightly consider the value of injunctive *and* monetary relief together in assessing whether a class action settlement provides sufficient relief to the class. *See, e.g.*, *Poertner*, 618 F. App'x at 630 (noting that objector's valuation of settlement based on monetary benefits alone was "flawed," and affirming approval based on inclusion of injunctive and *cy pres* relief); *Hamilton*, 2014 WL 5419507, at *4 ("The Court finds the injunctive changes provided in the Settlement Agreement are important and have significant value to the class members nationwide."); *Perez*, 501 F. Supp. 2d at 1381 (describing important injunctive relief in discussing range of possible recovery); *Lipuma*, 406 F. Supp. 2d at 1323 (valuing injunctive relief as part of "significant relief" made available to class and determining that settlement was fair, adequate, and reasonable). Approval of the Settlement will put an end to Defendants' practices complained of by Plaintiff, thus protecting current and future individuals employed by Defendants should an extraordinary situation arise again where Defendants are required to repatriate crewmembers due

to a no-sail order. In this Court's judgment, this Settlement offers Settlement Class Members the best relief possible, which weighs strongly in favor of final approval.

### 6. There is no opposition from members of the Settlement Class, and Class Counsel and the Class Representative support the Settlement.

Class Counsel advocate for final approval, and their opinion is firmly based in their significant experience with the type of litigation at issue in this case. Class Counsel believe that this Settlement is extraordinary and clearly deserving of final approval. Based on this experience, and their decades of experience litigating complex class action lawsuits, it is Class Counsel's well-informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Class. The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). Moreover, the Class Representative supports the Settlement and opposition to the Settlement has been *de minimis*, with no objections and only eight exclusion requests from Class Members. As such, these considerations weigh strongly in favor of final approval.

For the reasons set forth above, the Court finds that the Settlement is fair, reasonable, and adequate, and not the product of collusion. The Parties are directed to implement and consummate the Settlement Agreement according to its terms and provisions.

### E. Reasonableness of the Fee Award

The instant Motion also seeks an award of fees and costs to Class Counsel, and an incentive award for Plaintiff for his services as the Class Representative. The Class Notice specifically addressed Class Counsel's attorneys' fee and costs and incentive award requests, and were provided to all class members and appropriate federal offcials under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ("CAFA"). *See* Declarations of Catherine MacIvor at

ECF Nos. [45], [46], [48], & [49]. Not a single class member nor regulator stated any opposition or objection to the requests. *Id.* The Court has reviewed the Motion and has had the benefit of hearing from counsel during the May 12, 2021 Final Approval Hearing.

Class Counsel request a fee award in the amount of $262,500.00 (inclusive of all costs and expenses), which is less than 30% of the Common Settlement Fund. The United States Supreme Court, the Court of Appeals for the Eleventh Circuit and this Court, have all expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement. *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorneys' fees may be determined based on total fund, not just actual payout to class); *see also Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015) ("attorney's fees awarded from a common fund shall be based on a reasonable percentage of the fund established for the benefit of the class" (quoting *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991))); *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 1628362, at *8 n.14 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded, even if the fee is separately paid by the defendant). "Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1363 (S.D. Fla. 2011) (citing *David*, 2010 WL 1628362, at *7-8).

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel are (1) the time and labor required; (2) the novelty and difficulty of the questions

involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach a settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. The factors set forth in *Camden I* fully support the full award requested.

In this case, the result—the recovery for every class member—is exceptional, and perhaps best supports the basis and justification for Class Counsel's requested fee award. The result achieved by counsel is a major factor to consider in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). The results of more than $875,000.00 in cash and the prospective relief are excellent. Each Class Member stands to obtain more than 100% of what they could have obtained at trial in this matter. Defendants are also required to change their business practices to ensure the issues which gave rise to this action do not repeat. This factor supports the requested fee award.

The other factors support awarding the requested fee as well. The complexity of this case required significant time and labor by Class Counsel. Class Counsel investigated their claims and allegations through discovery, including the review of documents. This work required a significant

amount of resources. Class Counsel worked efficiently, and achieved this excellent result swiftly, which effectively limited wasting resources of all parties and this Court.

This case presented novel questions of law and issues of fact. This is especially so as the case stemmed from a once-in-a-century pandemic, where the Defendants were ordered to stop operations and had to repatriate crew members from all over the world under extremely difficult circumstances due to travel restrictions and many other obstacles. Class action matters are generally complex, but this additional layer makes this action extremely unique. Defendants' defenses regarding compliance with contracts, arbitration, the different laws at issue, and the formulation of a damages methodology were also extremely complex.

This litigation required a high degree of skill and experience. Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before this Court. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by Defendants detailed above. This factor also favors awarding the requested fee.

Further, a determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). These factors weigh in favor of awarding Class Counsel 30% of the value of the cash benefits obtained (inclusive of expenses). Class Counsel received no compensation during the course of this litigation and incurred expenses on behalf of the Class, which they risked losing had Defendants prevailed. This factor supports the requested fee.

Turning to the next factor, the requested fee of 30% of the settlement fund is in keeping with fee awards approved by other courts in class actions. *See Sawyer v. Intermex Wire Transfer, LLC*, No. 19-cv-22212, 2020 WL 5259094, at *1 (S.D. Fla. Sept. 3, 2020) (awarding one-third of the common fund); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) ("Indeed, district courts in the Eleventh Circuit routinely approve fee awards of one-third of the common settlement fund."); *Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters*, 190 F.3d at 1295-96 (affirming attorneys' fee award of 33.3% to class counsel). In this case, considering the complexity of the case and the result achieved, a fee award of $262,500.00 is reasonable. *See Hanley*, 2020 WL 2517766, at *6.

Importantly, the percentage approved here includes all of Class Counsel and Defendants' Counsel's cost and expenses incurred in administrating the settlement, which will all be paid out of the final approved award of $262,500.00. Defendants declared that they have incurred $6,027.40 in costs related to the Cost of the Admnistration. *See* Catherine J. MacIvor Declaration ECF No. [45]. Included among the many responsiblities conducted by Defendants in the administration of the settlement, in cooperation and coordination with Class Counsel, included (1) providing the CAFA notice, (2) printing and preparing the necessary Claim Forms, Class Notice, and Claims Instructions,[1] (3) providing all of the notice to the class (via mail, email addresses (where available),[2] UPS Courier to Honduras (due to mailing issues during pandemic),[3] establishing a

---

[1] No charges incurred since the cost was absorbed by Defendant.

[2] $1080.09 in postage to international addresses.

[3] $1,725.92 for courier fees to Honduras since no U.S. Post Office mail was allowed in Honduras due to the pandemic.

P.O. Box.,[4] and (4) creating and maintaining a toll free phone hotline and the Settlement Website.[5] *Id.* Class Counsel state that they have incurred $7,279.00 in recoverable costs in this litigation. *See* ECF No. [51].

Moreover, Defendants' counsel expended, and were paid by their own client, approximately $60,000.00 between January and late April 2021 for their services, specifically in administering the notice and processing claims along with the oversight of Class Counsel. ECF No. [45]. Accordingly, the Court commends the Parties for suggesting, and carrying out in a successful manner, all of the necessary Costs of Administration (notice and claims) themselves, without having the need to hire an outside Claims and Notice Adminstrator, which can typically range in the many thousands of dollars and which would deplete the recovery to the Class. *See* ECF Nos. [45], [46], [48], & [49].

"Courts typically allow counsel to recover their reasonable out-of-pocket expenses. Indeed, courts normally grant expense requests in common fund cases as a matter of course." *Hanley*, 2020 WL 2517766, at *6; *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983) ("[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988."); *Flaum v. Doctor's Assoc., Inc.*, No. 16-61198-CIV, 2019 WL 2576361, at *4 (S.D. Fla. Mar. 11, 2019) (approving costs to Class Counsel). The requested award of costs and expenses consists of mediation, settlement administration, and case-related costs, and the Court finds these expenses to be in line with normal expenditure amounts. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2017

---

[4] Rental cost for P.O. Box was $538.21.
[5] Purchase of the domain was $108.20, domain registration was $23.16, website hosting and security was $601.82 and website design and implementation was $1,950.00.

WL 2472499, at *2 (M.D. Fla. June 5, 2017) (approving recovery of mediation, travel, and other expenses incurred in connection with the matter).

In this case, considering the complexity of the case, the exceptional result achieved, and the Settlement Class's favorable reaction to the Settlement Agreement, a fee award of $262,500.00 is reasonable and appropriate.

### F. Class Representative's Service Award

Finally, the Motion requests that an incentive award of $5,000.00 be awarded to Plaintiff as the Class Representative. After the original Settlement Agreement was executed and this Court's entered the Preliminary Approval Order, a panel of the Eleventh Circuit issued a ruling in *Johnson v. NPAS Solutions*, *LLC*, 975 F.3d 1244 (11th Cir. 2020), holding that service awards for class action representatives are impermissible. Importantly, no mandate in *Johnson* has been issued and a ruling for rehearing *en banc* is pending.

Class Counsel requested that this Court still approve the Settlement Agreement and all of its terms, but not approve the service award and retain "jurisdiction for the limited purpose of revisiting the denial of service awards if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Sols., LLC* and reverses its decision," or another Eleventh Circuit decision overrules *Johnson*. *See Metzler, et al. v. Medical Mgmt. Int'l Inc., et al*., No. 8:19-cv-2289-T-33CPT, 2020 WL 5994537, at *3 (M.D. Fla. Oct. 9, 2020) (reserving jurisdiction to award service awards if *Johnson* is reversed). The Court agrees with Class Counsel and will not approve the service award, but will reserve jurisdiction to allow Class Counsel to renew the request for a service award should *Johnson* be reversed.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [44]**, is **GRANTED** as set forth below:

1.      The terms and conditions in the Settlement Agreement are incorporated as though fully set forth in this Judgment, and unless otherwise indicated, capitalized terms in this Judgment shall have the meanings attributed to them in the Settlement Agreement.

2.      The Court has personal jurisdiction over Settling Plaintiff, Defendants, and Settlement Class Members, venue is proper, the Court has subject-matter jurisdiction to approve the Settlement Agreement, including all Exhibits thereto, and the Court has jurisdiction to enter this Judgment. Without in any way affecting the finality of this Judgment, this Court retains jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and of this Judgment, and for any other necessary purpose, including, but not limited to, enforcement of the Releases contained in the Settlement Agreement and entry of such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement.

3.      The Settlement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this Litigation and of the strengths and weaknesses of their respective positions. The Settlement was reached after the Parties had engaged in mediation and extensive negotiations. Counsel for the Parties were therefore well-positioned to evaluate the benefits of the Settlement, taking into account the expense, risk and uncertainty of protracted litigation with respect to numerous difficult questions of fact and law.

4.      The Court finds that the prerequisites for a class action under Fed. R. Civ. P. 23(a) and 23(b) have been satisfied for settlement purposes for each Settlement Class Member in that:

(a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Settling Plaintiff are typical of the claims of the Settlement Class Members he seeks to represent; (d) Settling Plaintiff and Class Counsel have and will continue to fairly and adequately represent the interests of the Settlement Class Members for purposes of the Settlement; (e) the questions of law and fact common to Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is reasonably ascertainable; and (g) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Accordingly, and pursuant to Fed. R. Civ. P. 23, this Court finally certifies the Settlement Class.

5.     Pursuant to Fed. R. Civ. P. 23, the Court finally certifies the Settlement Class for settlement purposes only, as identified in the Settlement Agreement, which shall consist of the following:

> All seafarer-employees who were physically present on the *Grand Celebration* for at least one day anytime between March 18, 2020 until August 20, 2020 and were (1) terminated such that severance is due under their employment contracts and/or (2) were employed and performed a designated job at Defendants' request. "Seafarer-employees" shall not include deck and engine employees and independent contractors, as well as the Cruise Defendants' corporate officers or corporate directors. "Seafarer-employees" shall not include Cruise Defendants' corporate officers or corporate directors.

6.     The Court finally designates the law firms of Lipcon, Margulies, Alsina & Winkleman, P.A. and The Moskowitz Law Firm, PLLC as Class Counsel for the Settlement Class.

7.     The Court finally designates Settling Plaintiff Dragan Janicijevic as the Settlement Class representative.

8.     The Court makes the following findings with respect to Class Notice to the Settlement Class:

8.1.    The Court finds that the distribution of direct Notice, Claim Form, Claim Form Instructions, and the creation of the Settlement Website and a toll-free telephone number for Class Member questions, all as provided for in the Settlement Agreement and the Preliminary Approval Order, (i) constituted the best practicable notice under the circumstances that was reasonably calculated, under the circumstances, to apprise Noticed Class Members of the Settlement, their right to object or to exclude themselves from the Settlement, and their right to appear at the Final Approval Hearing; (ii) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and (iii) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

8.2.    Class Counsel has filed with the Court a declaration from Catherine J. MacIvor, ECF No. [44-2], attesting that the Mail Notice, Claim Form, and Claim Form Instructions were mailed to Noticed Class Members on February 5, 2021, and the Settlement Website was established on January 19, 2021. Adequate Class Notice was given to the Noticed Class Members in compliance with the Settlement Agreement and the Preliminary Approval Order.

9.    Persons who wished to be excluded from the Settlement Class were provided an opportunity to request exclusion as described in the Mail Notice and on the Settlement Website. The Court finds that the individual interests of the eight persons who timely sought exclusion from the Settlement Class are preserved and that no person was precluded from being excluded from the Settlement Class if he or she so desired. *See* ECF No. [48-1]. Those persons who timely and properly excluded themselves from the Settlement Class are identified in the Supplemental Declaration of Catherine J. MacIvor, ECF No. [49-1].

10.    Defendants have complied with all notice obligations under the Class Action

Fairness Act, 28 U.S.C. §§ 1715, *et seq.*, in connection with the proposed Settlement.

11.     By failing to timely file and serve an objection in writing to the Settlement Agreement, to the entry of this Judgment, to Class Counsel's application for fees, costs, and expenses, or to the Case Contribution Award to the Settling Plaintiff, in accordance with the procedure set forth in the Mail Notice and mandated in the Preliminary Approval Order, Settlement Class Members are deemed to have waived any such objection through any appeal, collateral attack, or otherwise.

12.     The terms and provisions of the Settlement Agreement, including all Exhibits attached thereto, have been entered into in good faith and, pursuant to Fed. R. Civ. P. 23(e), are fully and finally approved as fair, reasonable, adequate as to, and in the best interests of, Settlement Class Members. The Court enters judgment approving and adopting the Settlement and the Settlement Agreement, fully and finally terminating all Released Claims of all Releasing Persons in this Litigation against the Released Parties, on the merits and with prejudice.

13.     Pursuant to Fed. R. Civ. P. 23(h), the Court awards Class Counsel's attorneys' fees and expenses in the amount of two-hundred sixty-two thousand five hundred dollars and zero cents ($262,500.00) payable by Defendants pursuant to the terms of the Settlement Agreement. The Court denies Plaintiff's request for a service award at this time but retains jurisdiction for the limited purpose of revisiting the denial of service award if the Eleventh Circuit holds a rehearing *en banc* in *Johnson v. NPAS Solutions*, *LLC*, 975 F.3d 1244 (11th Cir. 2020), and reverses its decision, or if another Eleventh Circuit decision overrules *Johnson*. Defendants shall not be responsible for, and shall not be liable with respect to the allocation among Class Counsel or any other person who may assert a claim thereto, the attorneys' fees and expenses awarded by the Court.

14.     The terms of the Settlement Agreement, including all Exhibits thereto, and of this Judgment, shall be forever binding on, and shall have *res judicata* and preclusive effect in and on, all claims and pending and future lawsuits maintained by Settling Plaintiff and/or each Settlement Class Member, as well as each of their respective spouses, family members, executors, representatives, administrators, guardians, wards, heirs, attorneys-in-fact, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, and all other Releasing Persons.

15.     The Releases, which are set forth in Section 15 of the Settlement Agreement, are expressly incorporated herein in all respects and are effective as of the entry of this Judgment. Each of the Released Parties is forever released, relinquished, and discharged by each Releasing Person, including all Settlement Class Members, from all Released Claims (as that term is defined below and in the Settlement Agreement).

15.1.   The definitions in the Settlement Agreement are incorporated in and are part of this Judgment.

15.2    Each Releasing Party shall, by operation of this Judgment, be deemed to have released any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements (oral or written), extracontractual claims, damages, actual, statutory, punitive, exemplary or multiplied damages, expenses, costs, attorney's fees and/or obligations, whether in law or equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on 46 U.S.C. § 10313, 46 U.S.C. § 10504, 18 U.S.C.

§ 1595, federal, state, local, statutory or common law or any other law, rule or regulation, including

the law of any jurisdiction outside the United States, against the Released Parties, or any of them,

arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements,

promises, representations, omissions or failures to act regarding any and all alleged unpaid wages

or monies promised, including all past, present and future claims that were brought or could have

been brought in the Action concerning any of the claims raised therein.

     15.3  In agreeing to the foregoing Release, Settling Plaintiff, for himself and on

behalf of Settlement Class Members, shall be deemed to have acknowledged that unknown losses

or claims could possibly exist and that any present losses may have been underestimated in amount

or severity. Settling Plaintiff or any Settlement Class Member may hereafter discover facts other

than or different from those that he/she knows or believes to be true with respect to the subject

matter of the Released Claims or the law applicable to such claims may change. Nonetheless,

Settling Plaintiff and each Settlement Class Member shall be deemed to have irrevocably waived

and fully, finally and forever settled and released any known or unknown, suspected or

unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent,

claims with respect to all Released Claims. Further, Settling Plaintiff and each Settlement Class

Member shall be bound by this Agreement, including by the Releases, and all of their claims in

the Litigation asserted against Defendants shall be dismissed with prejudice and released, without

regard to subsequent discovery of different or additional facts or subsequent changes in the law,

and regardless of whether unknown losses or claims exist or whether present losses may have been

underestimated in amount or severity, and even if they never received the Mail Notice of the

Settlement, did not otherwise have knowledge of the Settlement, or never received Claim

Settlement Relief. The Settling Parties shall be deemed to have acknowledged that the foregoing

Releases were bargained for and are a material element of the Settlement Agreement.

15.4.   Released Claims do not apply to new claims arising after the close of the Settlement Class Period based on conduct that took place after the close of the Settlement Period. Nothing in the Order shall be deemed a release of any Settlement Class Member's respective rights and obligations for such Post Settlement Claims.

15.5.   Settling Plaintiff and Class Counsel have represented and warranted that there are no outstanding liens or claims against the Litigation, and Settling Plaintiff and Class Counsel will be solely responsible for satisfying any liens or claims asserted against the Litigation.

15.6   Settling Plaintiff and each Settlement Class Member shall be deemed to agree and acknowledge that the foregoing Releases were bargained for and are a material element of the Settlement Agreement.

15.7   The Releases do not affect the rights of Noticed Class Members who timely and properly submitted a Request for Exclusion.

15.8   The Settlement Agreement shall be the exclusive remedy for all Settlement Class Members with regards to the Released Claims.

16.   Neither the Settlement Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor this Judgment, nor any of its terms and provisions shall be:

16.1.   Offered by any person or received against any of the Released Parties as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by any Released Party of the truth of the facts alleged by any person or the validity of any claim that has been or could have been asserted in the Litigation or in any litigation against any Released Party, or other judicial or administrative proceeding, or the deficiency of any defense that has been

26

or could have been asserted in the Litigation or in any litigation against any Released Party, or of any liability, negligence, fault or wrongdoing of any Released Party;

16.2.   Offered by any person or received against any of the Released Parties as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by any of the Released Parties or of any other wrongdoing by any of the Released Parties;

16.3   Offered by any person or received against any of the Released Parties as evidence of a presumption, concession, or admission with respect to any liability, negligence, breach, fault, omission, or wrongdoing in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal;

16.4   Offered or received in evidence in any action or proceeding against any of the Released Parties in any court, administrative agency, or other tribunal for any purpose whatsoever, other than to enforce or otherwise effectuate the Settlement Agreement (or any agreement or order relating thereto), including the Releases or this Judgment.

17.   In the event that the Effective Date does not occur, this Judgment shall automatically be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void, and the Parties will be restored to their positions as of August 20, 2020.

18.   This Judgment and the Settlement Agreement may be filed in any action against or by any Released Party in order to support any argument, defense or counterclaim, including, without limitation, those based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion, issue preclusion, or similar defense or counterclaim.

19.     Settling Plaintiff and all Settlement Class Members and their respective spouses, family members, executors, representatives, administrators, guardians, wards, heirs, attorneys-in-fact, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, joint tenants, tenants in common, tenants by the entirety, co-mortgagors, co-obligors, co-debtors, attorneys, agents and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf, have released the Released Claims as against the Released Parties, and are, from this day forward, permanently barred and enjoined from directly or indirectly (a) filing, commencing, prosecuting, maintaining (including claims or actions already filed), intervening in, defending, or participating in (as parties, class members or otherwise) any action in any jurisdiction before any court or tribunal based on, arising from, or relating to any of the Released Claims or the facts and circumstances relating thereto, against any of the Released Parties; or (b) organizing any Settlement Class Members, or soliciting the participation of any Settlement Class Members, for purposes of pursuing any action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) in any jurisdiction before any court or tribunal based on or relating to any of the Released Claims or the facts and circumstances relating thereto. Any person in violation of this injunction may be subject to sanctions, including payment of reasonable attorneys' fees incurred in seeking enforcement of the injunction. The foregoing injunction is issued in order to protect the continuing jurisdiction of the Court and to effectuate and implement the Settlement Agreement and this Judgment.

20.     Settlement Class Members shall promptly dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member in any jurisdiction

that are based on Released Claims pursuant to the Settlement Agreement and this Judgment, and that are enjoined pursuant to this Judgment.

21.     The claims of Settling Plaintiff, individually and on behalf of the Settlement Class, including all individual claims and class claims presented herein, are dismissed on the merits and with prejudice against Defendants without fees (including attorneys' fees) or costs to any party except as otherwise provided in this Judgment.

22.     Settling Parties are directed to implement and consummate the Settlement according to its terms and provisions, as may be modified by Orders of this Court. Without further order of the Court, Settling Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement, as may be modified by the Preliminary Approval Order or this Judgment.

23.     Pursuant to Rule 54(b), the Court enters Judgment as described herein and expressly determines that there is no just reason for delay. Without impacting the finality of this Judgment, the Court shall retain jurisdiction over the construction, interpretation, consummation, implementation, and enforcement of the Settlement Agreement and this Judgment, including jurisdiction to enter such further orders as may be necessary or appropriate.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 19, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record